(No. 53219.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. RICHARD LEONARD, Appellee.

*Opinion filed December 1, 1980.—Rehearing
denied January 29, 1981.*

Tyrone C. Fahner and William J. Scott, Attorneys General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, and Marcia B. Orr, Richard Burke, and William Gamboney, Assistant State's Attorneys, of counsel), for the People.

Ralph Ruebner, Deputy Defender, and Patricia Unsinn, Assistant Appellate Defender, of the Office of the State Appellate Defender. of Chicago, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Richard Leonard, was convicted in a jury trial in the circuit court of Cook County of the offense of murder (Ill. Rev. Stat. 1975, ch. 38, par. 9–1) and sentenced to a term of imprisonment of 30 to 60 years. The appellate court reversed defendant's conviction and remanded the cause for a new trial (80 Ill. App. 3d 741), holding that testimony relating to certain statements of the victim, Wayne Tews, was hearsay and had been erroneously admitted. In addition, the appellate court determined that the jury should have been instructed on the lesser included offense of voluntary manslaughter (Ill. Rev. Stat. 1975, ch. 38, par. 9–2). We granted the State leave to appeal. The evidence introduced at trial has been thoroughly developed in the appellate court opinion and will be briefly restated here only as relevant to the issues presented.

The State called as its first witness Patricia Ann Gorski,

the sister of the victim. She testified that on April 26, 1976, the date of the homicide, decedent was 42 years old, approximately 5 feet 11 inches tall, and weighed approximately 200 pounds, and that he had walked with a limp since childhood. She stated further that decedent was a security guard employed at the Satyr, a building located at 1221 North Dearborn Street in Chicago. In addition, she stated that on Easter Sunday, the Sunday preceding the homicide, she had seen the victim, and he was in good health. She next saw decedent at a funeral home on April 27, 1976, and he was dead.

Frieda Goldberg, resident manager of the Satyr, a 208-unit apartment complex located at 1221 North Dearborn, was the next witness to testify. As resident manager, Miss Goldberg was responsible for leasing the apartments, maintenance of the building, and responding to the tenants' complaints. Miss Goldberg testified that she came to know defendant through her employment. She first met defendant during negotiations of a lease. The property leased was subsequently used in the operation of a discotheque known as the Rhinoceros Club. This club was located on the first floor of the building, adjacent to the lobby. She later saw defendant participating in the operation of this club and had further contact with defendant while showing him an apartment in the building. Miss Goldberg also testified that she knew the victim, Wayne Tews. She stated that she knew Tews for approximately one year, that he was employed by Around the Clock Security Service and assigned to the building as a security guard and doorman, and that she had never received any complaints concerning him. She also testified that the operators of the Rhinoceros Club were evicted for nonpayment of rent in April 1976, and that she was present when the sheriff removed all of the items of personal property located on the premises.

On April 26, 1976, at approximately 1 a.m., Miss

Goldberg received a telephone call. She testified that the caller identified himself as Wayne Tews and that he stated that the manager of the Rhinoceros Club wanted to get into the club. In addition, Tews then stated, "He's got a gun." Miss Goldberg testified that she had previously talked with Tews on the telephone, but on this occasion his voice was "very strange, didn't sound like himself. It was very slow and nervous." Miss Goldberg also testified that she heard another voice saying, "Tell the mother f------ manager to come down now, now, now." Miss Goldberg stated that she recognized the voice as that of defendant. At the time of the phone call, however, she did not remember his name. Miss Goldberg told Tews to stall and not to worry, hung up the phone, and called the police. On cross-examination, Miss Goldberg reiterated that she received the phone call at approximately 1 a.m.

Robert Reinschreiber, called as a witness by the State, testified that at approximately 1 a.m. on April 26, 1976, he was returning to his car accompanied by several friends, whom he identified as Richard Frenzel, Teri Moss, and Ron Majcek. The group was walking northbound on Dearborn and had spent the preceding two hours socializing at a lounge and discotheque known as Mother's, located around the corner from 1221 North Dearborn. While crossing the street, Reinschreiber noticed two men engaged in a struggle over a handgun emerge from the lobby of a building. One of the men held the gun by the handle while the other, a security guard, held the gun by the barrel. Reinschreiber identified defendant as the man engaged in the struggle who was holding the handle of the gun. Reinschreiber next heard a shot, saw the guard fall back and cough up a stream of blood, and he then saw the guard resume the struggle for control of the gun. When the guard lost his ability to continue fighting, defendant pushed him over a banister, causing him to fall to the ground. Reinschreiber estimated that Tews fell a distance of approxi-

mately six feet. Reinschreiber then stated that he saw defendant lean over the banister and heard defendant yell, "Die mother f-----, die." Defendant repeated this epithet approximately five or six times. Reinschreiber then noticed defendant descending the stairs of the building looking somewhat "spaced out." Reinschreiber noticed that defendant no longer had a gun, and Reinschreiber immediately stopped a cab and asked an occupant to call the police. He stated that within minutes the police arrived and that he identified defendant as the man who shot Tews. In addition, he stated that throughout this struggle he saw only one gun, that he did not see an exchange of blows between the two men, and that at all times during the struggle they had their hands placed on the gun. On cross-examination, he stated that defendant did not attempt to flee.

Richard Frenzel, followed by Teri Moss, were also called as witnesses by the State. Both witnesses substantially corroborated the testimony related by Reinschreiber. Frenzel added that the struggle at the entrance to the building lasted approximately 30 to 45 seconds. Moss noticed that the security guard was taller and larger than the defendant, but she could not remember if there was an exchange of blows.

In addition to the above, the evidence introduced at trial established that decedent had suffered two lacerations to the back of his head, a laceration on his right hand, and that the cause of death was a close-range gunshot wound to the chest. It was further established that, at the time of his death, decedent had in his possession a .22-caliber gun capable of firing blanks or tear gas. This gun was recovered by police officers from decedent's pocket. It was stipulated by the parties that defendant suffered a laceration of the lower lip which required sutures, and it was further established that there was a trail of blood located on the stairs of the building which defendant descended.

The defense, in opening argument, admitted that the weapon involved in the struggle was owned by defendant.

We initially address the State's argument related to Frieda Goldberg's testimony concerning her telephone conversation with decedent. The appellate court, finding no direct or circumstantial evidence of an occurrence sufficiently startling to produce a spontaneous and unreflecting statement other than decedent's statement itself, reasoned that the statement, "He's got a gun," was inadmissible hearsay. In the absence of Illinois authority on this point, the appellate court relied extensively on the reasoning of the Texas Supreme Court in *Truck Insurance Exchange v. Michling* (Tex. 1963), 364 S.W.2d 172, 175. In *Michling,* a statement by a deceased employee relating to the circumstances of an alleged injury at work was offered in a workmen's compensation action brought by the employee's widow. The statement was found not to be admissible as an excited utterance because there was absolutely no evidence to corroborate the existence of a sufficiently startling event.

The State contends that, in the present case, the existence of a sufficiently startling underlying event was proved circumstantially. In support of this position, the State argues that the telephone conversation, which occurred at approximately 1 a.m., was immediately followed by a struggle with defendant over a gun, and that the struggle and its proximity in time to the telephone conversation were established by the undisputed testimony of three witnesses. In addition, directing our attention to what is characterized as a "modern trend," the State argues that the statement itself is sufficient proof of the existence of a startling underlying event. (See McCormick, Evidence sec. 297 (2d ed. 1972).) In the alternative, the State suggests that the statement is admissible as a present-sense impression. See Fed. R. Evid. 803(1).

In seeking to sustain the decision of the appellate

court, defendant argues that his right of confrontation and cross-examination is violated where evidence of statements made by the deceased are admitted absent independent evidence of a sufficiently startling event. Defendant refers us to the decisions of other jurisdictions which have refused to admit the declaration under circumstances where it would appear unreliable and untrustworthy. See generally *State v. Ellis* (Maine 1972), 297 A.2d 91, 94 (refusing to admit decedent's statement, the only evidence of defendant's malice, where decedent refused an offer of help from the listener); *State v. Gunthorpe* (1970), 81 N.M. 515, 520, 469 P.2d 160, 165 (refusing to admit decedent's identification of defendant, her former husband, where no evidence of a startling event was presented); *Chrysler Motors Corp. v. Davis* (1970), 226 Ga. 221, 224, 173 S.E.2d 691, 694 (refusing to admit decedent's statement on the issue of proximate cause due to its self-serving nature).

We initially note our agreement with defendant and the appellate court that, absent some evidence of the existence of an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, the testimony relating the out-of-court statement should be excluded. (*People v. Poland* (1961), 22 Ill. 2d 175, 181.) We believe, however, that the appellate court's reliance upon *Truck Insurance Exchange v. Michling* (Tex. 1963), 364 S.W.2d 172, 175, is misplaced and that the testimony was properly admitted.

In *Michling,* the only evidence offered to prove that the deceased employee suffered an injury arising out of his employment was that given by his widow. Mrs. Michling testified that on the date in question her husband returned home from work and stated that he "had hit his head on the bulldozer, the iron bar across the seat." This was the only evidence introduced which tended to prove that decedent had been working. Other evidence introduced in

the proceeding tended to establish that decedent did not work on the date in question; that none of the employer's bulldozers were operated on that date; that there was no bar across the seat of the bulldozer; and that decedent had died from a congenital disorder with no evidence of external injury. (364 S.W.2d 172, 174.) Not only was the statement the only evidence introduced which supported the claim, there was strong evidence to suggest its unreliability and absolutely no evidence to corroborate the existence of a sufficiently startling event, which was the injury sought to be proved.

In the present case, decedent's statement, "He's got a gun," was corroborated by the testimony of Robert Reinschreiber, Richard Frenzel, and Teri Moss, who witnessed the nearly contemporaneous struggle over this weapon. Given the nearly contemporaneous corroboration of the underlying event by these witnesses, and the statement made by defendant during the call, we find sufficient circumstantial evidence to corroborate the existence of an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, and we therefore hold that the trial court did not abuse its discretion in admitting this testimony. See generally *People v. Poland* (1961), 22 Ill. 2d 175, 182 (sufficient circumstantial evidence to corroborate the declarant's presence at the startling event); *Commonwealth v. Coleman* (1974), 458 Pa. 112, 121, 326 A.2d 387, 391 (Pomeroy, J., concurring) (telephone conversation of a homicide victim immediately preceding the homicide is admissible where sufficiently corroborated); Annot., 74 A.L.R.3d 963 (1976); E. Cleary and M. Graham, Illinois Evidence sec. 803.3 (3d ed. 1979) (recognizing circumstantial proof of the underlying event as sufficient for admissibility).

The State next contends that the appellate court also erred in ruling that there was sufficient evidence of mutual combat to allow an instruction on the lesser included of-

fense of voluntary manslaughter (Ill. Rev. Stat. 1975, ch. 38, par. 9—2). The State argues, relying upon *People v. Handley* (1972), 51 Ill. 2d 229, that the evidence presented establishes that defendant was clearly the aggressor and that decedent's conduct, responding to an unprovoked lethal attack, cannot be considered sufficient provocation. Defendant contends that there was adequate evidence of mutual combat and therefore the question should have been presented for resolution by the jury.

We agree with the appellate court that the trial court should have tendered an instruction on the lesser included offense of voluntary manslaughter. Our Criminal Code of 1961 provides in pertinent part:

> "(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
>> (1) the individual killed, ***
>> ***.
>
> Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." (Ill. Rev. Stat. 1975, ch. 38, par. 9—2.)

Defendant correctly argues that the offense of voluntary manslaughter is an acknowledgement by the law of the mitigating effect of human weakness and intense passion in an otherwise unjustified homicide. The offense of voluntary manslaughter has commonly been described as "[a]n intentional homicide committed in a sudden rage of passion engendered by adequate provocation, and not the result of malice conceived before the provocation ***." (Perkins, *The Law of Homicide*, 36 J. Crim. L. & Criminology 391, 412 (1946).) Defendant correctly contends that mutual combat has been recognized in Illinois as adequate provocation, sufficient to reduce the offense to voluntary manslaughter. (*People v. Crews* (1967), 38 Ill. 2d 331.) As we stated in *People v. Handley* (1972), 51 Ill. 2d 229, 235, "It is well settled that if there is evidence in

the record which, if believed by a jury, would reduce the crime to manslaughter, a manslaughter instruction tendered by defendant must be given."

In the present case there is evidence that defendant entered the premises and in a threatening manner demanded entry to the Rhinoceros Club, his place of previous employment. There is also evidence that defendant suffered a lacerated lip and that decedent suffered lacerations to the head and right hand. The circumstances under which these injuries arose are not disclosed by the evidence at trial. Subsequent to the circumstances which produced these injuries, defendant and decedent were engaged in a struggle over a weapon. Defendant's statements immediately following the shooting are evidence that defendant was operating under an intense passion. While it is true that defendant's intent to kill could have been formulated prior to these events, it is equally true that this intent could have arisen in the heat of this struggle.

Also relevant to the issue of whether a voluntary manslaughter instruction should have been tendered is evidence, excluded by the trial court, of defendant's physical condition two days after the occurrence. Barbara Leonard, former wife of defendant, testified in an offer of proof that on April 28, 1976, she visited defendant in Cook County jail and that on this occasion she observed stitches and swelling in defendant's lower lip, scratches about his face, and bluish discoloration around the eyes. The appellate court held that, absent a showing that these injuries resulted from the altercation with Tews, the trial court properly excluded the testimony. We disagree with this ruling.

The test of the relevance of evidence is whether it fairly tends to prove or disprove the particular offense charged or tends to make the proposition at issue more or less probable. (*People v. Monroe* (1977), 66 Ill. 2d 317, 321-22.) In the present case, we do not find that defend-

ant's condition two days after this struggle is so remote in time as to render this testimony irrelevant. We are also persuaded by the fact that during this subsequent two-day period defendant was at all times in custody. While it is true that these injuries could have been sustained under circumstances other than the struggle with Tews, we believe that this factor goes to the weight that should be accorded this testimony rather than to its admissibility. (*Cf. People v. Panus* (1979), 76 Ill. 2d 263, 271.) We therefore hold that this testimony, relevant to the issue of provocation, should have been admitted.

The State's reliance upon *People v. Handley* (1972), 51 Ill. 2d 229, is misplaced. In *Handley,* the victim was beaten by a number of persons and in the course of this beating had succeeded in knocking down two of his assailants and choking one of them. We noted in *Handley* that, in view of all of the surrounding circumstances, including the fact that this was not a "one on one" situation, the victim's actions could not be considered serious provocation for the beating received. (*People v. Handley* (1972), 51 Ill. 2d 229, 235.) The circumstances of the present case more closely resemble *People v. Craven* (1973), 54 Ill. 2d 419. In *Craven,* there was evidence presented by the State that defendant, clearly an aggressor, assaulted decedent and a struggle followed. In the course of this struggle, and preceding the homicide, defendant suffered a laceration on the arm. On the basis of these facts we stated, "Testimony by the State's own witnesses, if credited by the jury, could have led to a conclusion of mutual combat between defendant and the deceased." (*People v. Craven* (1973), 54 Ill. 2d 419, 425.) We believe that the evidence in the present case presents some evidence of mutual combat and that the State's argument concerning the adequacy of provocation under these circumstances should be addressed by the jury. We hold that the trial court should have tendered an instruction on

the lesser included offense of voluntary manslaughter and that the cause must therefore be remanded for a new trial.

Defendant next contends that he was denied his constitutional right to present a defense. Defendant claims that he was prevented from testifying by the trial judge's refusal to bar the impeachment use of his prior convictions of forgery and delivery of a controlled substance, and that this claim is buttressed by the fact that he informed the court that he would not testify if this impeachment were allowed. Defendant correctly contends that in our decision in *People v. Montgomery* (1971), 47 Ill. 2d 510, we sought to strike an appropriate balance between the use of prior convictions in the jury's assessment of the credibility of a witness, particularly the defendant, and the need for the jury to base its decision upon a full and complete hearing of the evidence. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 518.) We also stated in *Montgomery* that in determining whether the danger of unfair prejudice from evidence of a prior conviction far outweighs its probative relevance to credibility, such factors as the nature of the crime, its nearness or remoteness in time, the subsequent career of the person, and whether the crime was similar to the one charged are relevant to this determination. In addition, we stated that the burden is on defendant to demonstrate this prejudice. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 518.) Defendant's refusal to testify, standing alone, will not serve as a basis for concluding that he is prejudiced. We agree with the appellate court that this decision was a matter of trial strategy. Defendant did not suggest to the trial judge, or explain in his brief on appeal, any other prejudice which would stem from impeachment by his prior convictions or how any such prejudice would substantially outweigh the probative value of the convictions on the question of credibility. We agree with the appellate court that defendant's decision not to testify was a matter of trial strategy.

424

For the foregoing reasons, the judgment of the appellate court reversing the circuit court's judgment is affirmed, and the cause is remanded for a new trial not inconsistent with the views expressed herein.

*Affirmed and remanded.*