(No. 55723.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DENNIS BRYANT, Appellee.

*Opinion filed January 24, 1983.*

CLARK, J., took no part.
GOLDENHERSH, J., dissenting.

Tyrone C. Fahner, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Melbourne A. Noel, Jr., Assistant Attorney General, and Michael E. Shabat and Gregory J. Ellis, Assistant State's Attorneys, all of Chicago, of counsel), for the People.

. Steven Clark, Deputy Defender, and Phillip J. Zisook, Assistant Appellate Defender, of the Office of State Appellate Defender, of Chicago, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

A Cook County jury convicted defendant, Dennis Bryant, on two counts of armed robbery for the holdup of an Evanston 7-Eleven store. He was sentenced to two concurrent 12-year terms of imprisonment. In the appellate court, the State agreed that defendant should only have been charged with one count of armed robbery. After finding erroneous an in-court identification of defendant and the introduction of a hearsay statement concerning his guilt, the appellate court reversed defendant's conviction on the remaining count. (100 Ill. App. 3d 17.) We granted the State's petition for leave to appeal.

On December 23, 1978, Harold and Norma Lederer were accosted inside the 7-Eleven store by a young black male who was armed with a pistol. The robber took small bills and loose change from the cash register and packets of bills wrapped in 7-Eleven cash register tape,

some of which bore Harold's initials, from a floor safe. While Harold, the assistant night manager, was opening the register and safe, the gunman stood next to Norma under the store's bright fluorescent lights. After pocketing the money from the safe, the robber ordered the Lederers to lie upon the floor; Norma, however, refused to do so and continued to observe the robber while he left the store.

The Lederers quickly called the Evanston police, and Norma gave a detailed description of the robber. She told the police that he had worn blue pants, a blue jacket, a blue knit hat with a golden or orange tassel, and a piece of cloth covering part of his face. While responding to the call, Officer Glanz used a spotlight to view passengers in on-coming cars. Noting that the sole occupant of a Cadillac matched the description radioed to him, Officer Glanz attempted to stop that car. A chase ensued and, after numerous turns, the Cadillac entered an alley blocked by another car. The driver abandoned the Cadillac, which was later found to be registered to defendant. The driver also left behind his hat, a gun, two pieces of white cloth, and some loose money and rolls of change.

Officer Glanz lost sight of the driver, but was able to follow his footprints in the fresh snow. This trail led to the open door of a ground-level apartment. Upon entering the apartment, Officer Glanz found a black male using the telephone and took him into custody. This man was later identified as Early Patterson, the tenant of that apartment and a friend of defendant's aunt. Other officers arriving at the scene also entered the apartment and found defendant crouched down by a refrigerator. At the time of his arrest, defendant was wearing blue pants with wet cuffs and a blue jacket. In his pockets were bills wrapped in 7-Eleven register tape bearing Harold Lederer's initials.

Both Early Patterson and defendant were taken to the station house, but Patterson was released after dictating a statement. Defendant remained in custody, and Officer Glanz noted that defendant had a puncture wound in his hand similar to the one suffered by Officer Glanz while climbing a fence in the course of the chase.

Later in the day, Harold and Norma Lederer went to the station house and identified the hat, gun and money recovered by the police. In addition, Norma Lederer was shown an array of six photographs, consisting of 10 different mug shots of five individuals and one Polaroid photo of defendant, all of which were small color prints. The photo of defendant was a somewhat blurry frontal view. Norma Lederer told the police that defendant's photograph was that of the robber.

At trial, Norma and Harold Lederer identified the defendant as the gunman. Norma again described him, testifying that he had worn a hat pulled down to about one-half inch above his eyebrows and a piece of cloth which hung down loosely from the middle of the bridge of his nose to below his jaw. She testified that she was able to discern the structural features of the robber's face despite the mask because his face was outlined through the cloth as he moved.

After Officer Glanz testified, the prosecutor sought to call Early Patterson as a court's witness, claiming that he could not vouch for Patterson's veracity. Upon objection by defendant, the trial judge ruled that the State could call Patterson as a hostile witness and that the prosecutor would be allowed to impeach Patterson if necessary. After Patterson denied that defendant had told him of robbing the 7-Eleven store, the prosecutor sought to impeach him by introducing part of the written statement which Patterson had signed on the morning of the robbery:

"Q. Did you tell—strike the question. Was this question asked of you, Mr. Patterson, by Detective Haytow,

and did you give these answers:
'Q. Mr. Patterson, will you tell me what you know of this armed robbery?'
'A. Dennis Bryant came down in the basement. I went down behind him. I asked him what was wrong. He said the police had just taken his car. He said he just robbed a 711, I think that's what it was.' "

The State again referred to the same portion of this statement while subsequently examining the officer to whom it had been given.

The appellate court found that the in-court identification evidence was improper because the photographic identification technique was both unnecessarily and impermissibly suggestive, and that there was no independent basis to establish reliability. We do not agree that the procedure itself was suggestive. Rather, we agree with the State that a Polaroid photograph does not connote recency. Furthermore, a different format does not automatically render a photo suggestive: it may make it more so or less so. Different need not be equated with suggestive. (See *People v. Kubat* (1983), 94 Ill. 2d 437.) In addition, there is nothing in the record to indicate that Norma Lederer knew that an arrest had been made at the time of the identification procedure or that the police in any way indicated which of the photos was defendant's.

More importantly, the evidence shows that Norma Lederer's out-of-court identification was reliable. This court has held that even identifications made under suggestive conditions are admissible if reliable. (*People v. Manion* (1977), 67 Ill. 2d 564, 571, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513, citing *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) When assessing reliability, this court has consistently examined the totality of the circumstances. (*People v. McTush* (1980), 81 Ill. 2d 513; *People v. Manion* (1977), 67 Ill. 2d 564; *People v. Williams* (1975), 60 Ill. 2d 1.) The factors considered include " 'the opportunity of the witness

to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. (*Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382; see *People v. Manion* (1977), 67 Ill. 2d 564, 571.) This court has added another factor in determining whether a witness' identification has an independent origin: "any acquaintance with the suspect prior to the crime." *People v. Blumenshine* (1969), 42 Ill. 2d 508, 514.' " *People v. McTush* (1980), 81 Ill. 2d 513, 521.

The record indicates that these factors were adequately satisfied. Norma Lederer testified that she was able to directly observe the gunman for about five minutes at a distance of only a few feet in the brightly lighted store and that the mask failed to completely conceal his features. She retained her composure, and all of her attention remained focused on the robbery and the robber. Significantly, Norma Lederer was able to provide the police with a detailed description and immediately made a positive identification when presented with an array of photographs. Although she was unacquainted with defendant, the identification took place on the same day as the robbery.

Furthermore, as recognized by the Supreme Court, it is important to consider whether there was any pressure on the witness to make a certain identification. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 116, 53 L. Ed. 2d 140, 155, 97 S. Ct. 2243, 2254.) This factor has also been articulated in some of our appellate court opinions. (See *People v. Witted* (1979), 79 Ill. App. 3d 156; *People v. Hart* (1973), 10 Ill. App. 3d 857; *People v. Hudson* (1972), 7 Ill. App. 3d 333.) There was in this case no such pressure, coercion or suggestion. Because we conclude that Norma Lederer's out-of-court identification was reliable, it follows that her in-court identification was properly admitted. (*People v.*

*Manion* (1977), 67 Ill. 2d 564, 572, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513, citing *Manson v. Brathwaite* (1977), 432 U.S. 98, 110 n.10, 53 L. Ed. 2d 140, 151 n.10, 97 S. Ct. 2243, 2251 n.10.) Moreover, the same considerations which indicate that Norma Lederer's out-of-court identification was reliable lead us, of course, to conclude that her in-court identification rested upon an independent origin sufficient to establish separate reliability and was thus properly admitted. *People v. McTush* (1980), 81 Ill. 2d 513; *People v. Williams* (1975), 60 Ill. 2d 1.

The appellate court also found the photographic identification procedure impermissible because defendant was in custody at the time and the State failed to offer evidence of any extenuating circumstances. We note, however, that defendant failed at trial to object to the identification evidence on this basis. Consequently, that issue was not preserved for review. *People v. Pastorino* (1982), 91 Ill. 2d 178, 192; *People v. Queen* (1974), 56 Ill. 2d 560, 564.

The State contends that the introduction of part of Early Patterson's written statement, if improper, was harmless error. This court has repeatedly disapproved prosecutorial efforts to impart substantive character to prior inconsistent statements under the guise of impeachment. (*People v. Bailey* (1975), 60 Ill. 2d 37, 43; see also *People v. Gant* (1974), 58 Ill. 2d 178; *People v. Powell* (1973), 53 Ill. 2d 465; *People v. Collins* (1971), 49 Ill. 2d 179.) Moreover, statements made outside the defendant's presence which relate his confession of guilt or innocence are not competent evidence even for impeachment purposes if likely to prejudice the jury. (*People v. McKee* (1968), 39 Ill. 2d 265, 271; *People v. Tunstall* (1959), 17 Ill. 2d 160.) It was, therefore, erroneous to allow the introduction of Patterson's statement.

Nevertheless, we believe that admitting that evidence constituted harmless error. At the time of his arrest, defendant was hiding from the police and some of the pro-

ceeds from the robbery were found in his pockets. In addition, his attire conformed precisely to the description given by Norma Lederer, and he had sustained a puncture wound on his hand similar to that suffered by Officer Glanz during the chase. It is hard to conceive that a stronger showing of guilt could have been made; the jury " 'would not have found the State's case significantly less persuasive had [Patterson's testimony] been excluded.' " (*People v. Burbank* (1972), 53 Ill. 2d 261, 268-69, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017, quoting *Schneble v. Florida* (1972), 405 U.S. 427, 432, 31 L. Ed. 2d 340, 345, 92 S. Ct. 1056, 1060. See also *People v. Love* (1978), 71 Ill. 2d 74.) In light of this overwhelming evidence of defendant's guilt, the admission of Patterson's statement was clearly harmless beyond a reasonable doubt. *People v. Gant* (1974), 58 Ill. 2d 178, 186-87, citing *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. Gill* (1973), 54 Ill. 2d 357, 369, *cert. denied* (1974), 414 U.S. 1144, 39 L. Ed. 2d 100, 94 S. Ct. 897.

Although not addressed by the appellate court, defendant contends that he was denied a fair trial because of certain prosecutorial remarks during closing argument. These remarks touched upon the State's burden of proof, the credibility of the witnesses, the need for strong administration of the criminal law, and the fact that the State's evidence was "uncontradicted." While we have always emphasized that prosecutors may not engage in inflammatory and unfounded closing arguments (see, *e.g., People v. Whitlow* (1982), 89 Ill. 2d 322), "[e]ach case of this kind must be decided upon its own facts" (*People v. Weathers* (1975), 62 Ill. 2d 114, 120). We do not agree that the prosecutor's characterization of the State's burden as one which is "not unreasonable" and "met each and every day in courts" reduced that burden. Furthermore, this court has consistently held that a prosecutor's closing argument may

denounce the accused, reflect upon witness credibility, and urge the fearless administration of the law if it is based on facts in the record or inferences fairly drawn from those facts. (*People v. Anderson* (1971), 48 Ill. 2d 488; *People v. Durso* (1968), 40 Ill. 2d 242, *cert. denied* (1969), 393 U.S. 1111, 21 L. Ed. 2d 807, 89 S. Ct. 923; *People v. Hampton* (1962), 24 Ill. 2d 558, *cert. denied* (1962), 371 U.S. 868, 9 L. Ed. 2d 105, 83 S. Ct. 131; *People v. Tanthorey* (1949), 404 Ill. 520.) The prosecutor's remarks in the case before us fell within those legitimate bounds. Finally, we cannot agree that the prosecutor's characterization of the State's evidence as "uncontradicted" improperly directed the jury's attention to defendant's failure to testify. (See *People v. Skorusa* (1973), 55 Ill. 2d 577, 584; *People v. Mills* (1968), 40 Ill. 2d 4, 8; *People v. Norman* (1963), 28 Ill. 2d 77, 81.) Rather, this remark served only to emphasize the strength of the State's case; defendant's contention in this regard appears to be an afterthought based upon an undue emphasis on prosecutorial language taken out of context.

Defendant, raising the issue for the first time, contends that his trial was unfair because the trial judge's denial of a motion to suppress his prior conviction precluded defendant from taking the stand. Recognizing the applicability of the waiver doctrine, defendant urges us to characterize the ruling as plain error (73 Ill. 2d R. 615); instead, we find defendant's contention to be without merit. In *People v. Montgomery* (1971), 47 Ill. 2d 510, this court held that defendants must bear the burden of establishing that they will be unduly prejudiced by the admission of evidence concerning prior convictions. (47 Ill. 2d 510, 518, citing *Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936.) The defendant has failed to demonstrate that any potential prejudice would outweigh the probative value of the evidence for impeachment purposes, particularly in view of our recent holding that a failure to testify does not establish that a defendant was prejudiced. (*People v. Leonard*

(1980), 83 Ill. 2d 411.) As in *Leonard*, we view defendant's decision not to testify as a matter of trial strategy. (83 Ill. 2d 411, 423.) Consequently, we are unable to find any abuse of discretion by the trial judge in refusing to bar evidence concerning defendant's prior conviction.

The judgment of the appellate court is accordingly reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE CLARK took no part in the consideration or decision of this case.

JUSTICE GOLDENHERSH, dissenting:

I dissent and would affirm the judgment of the appellate court. I agree with the appellate court that the photographic identification employed in this case was impermissibly and unnecessarily suggestive.

The majority states: "More importantly, the evidence shows that Norma Lederer's out-of-court identification was reliable." (94 Ill. 2d at 520.) Considering that when she made the identification she had already been shown the clothing taken from defendant, that she was shown a Polaroid photograph, and admittedly the mask worn by the robber to a great extent covered his features, this is, at best, a questionable conclusion.

I do not agree with the majority that the introduction of Patterson's statement into evidence was harmless error. The appellate court, in its well-reasoned opinion, has clearly demonstrated that the admission of the testimony was highly prejudicial and not harmless. (See 100 Ill. App. 3d 17, 22-26.) It should be further noted, as pointed out by the appellate court, that the State's Attorney exacerbated the error by making repeated references to Patterson's statement in closing argument.

I agree that there was overwhelming evidence of

defendant's guilt. He was nevertheless entitled to a fair trial. He did not receive a fair trial, and I would reverse the judgment and remand for that purpose.