27 F.3d 569
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Lloyd LONDON, Petitioner/Appellant,
v.
Ronald HAWS, Warden, Respondent/Appellee.
 No. 92-3758.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 30, 1994.*
Decided July 5, 1994.
Rehearing and Suggestion for Rehearing En Banc
Denied Aug. 23, 1994.
 
 Before CUMMINGS, BAUER and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Lloyd London, a prisoner of Illinois, appeals the denial of his petition for a writ of habeas corpus, see 28 U.S.C. Sec. 2254. Also before the court is the appellee's "Motion To Strike Reply Brief of Petitioner-Appellant." This motion is GRANTED. London's "reply brief" (which is actually a motion for summary judgment) fails to comply with Circuit Rule 28(f), in that the brief is not "limited to matter in reply" to the appellee's brief.
 
 
 2
 We AFFIRM the judgment of the district court for the reasons stated in the attached memorandum, opinion and order of the district court.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 3
 United States of America ex rel., Lloyd London, Petitioner,
 
 
 4
 v.
 
 
 5
 Ronald Haws, Respondent.
 
 
 6
 Aug. 28, 1992.
 
 No. 91 C 2347
 MEMORANDUM, OPINION AND ORDER
 
 7
 Petitioner Lloyd London seeks a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254 concerning his conviction resulting from a trial in the Circuit Court of Cook County, Illinois. London has also filed a motion for summary judgment, two requests for production of documents, a motion to file a photograph, a motion to compel, and a motion for an independent expert microanalyst to perform tests. For the following reasons, we deny London's petition for habeas corpus and also deny all of the other motions mentioned above.
 
 I. FACTS
 
 8
 The following facts are taken from the opinion of the Illinois Appellate Court for the First Judicial District, No. 83-1499. At trial, the twenty-eight year old complainant testified that on May 6, 1982, she awoke to find London, whom she had known for two years as her mother's boyfriend, wearing gloves and carrying a gym bag in her bedroom. London kneeled on her back, pushed his hands against her face and pressed a knife against the back of her head and neck. London covered the complainant's head with a heavy, electrical tape and taped her hands against her body in several positions. He put his mouth to her vagina, then put his penis in her vagina, and then twice in her rectum. He later led her to the bathroom, scrubbed her in the bathroom with soap and gave her a vaginal douche and enema. After he left, she pulled the tape from her hands and eyes and ran to tell a neighbor that she had been raped. The neighbor pulled some tape from her face and called the police who arrived and took her to the hospital.
 
 
 9
 Prior to the incident, on March 9, 1982, the complainant had visited her mother's home, leaving her keys on a chair. As she was about to depart, she noticed that her keys were missing. She and her mother searched unsuccessfully for them, while London, who was there at the time, did not help them search. She identified work gloves found in London's car as feeling like those worn by her assailant on the night of the incident.
 
 
 10
 Testimony given by the complainant's neighbor essentially corroborated that given by the complainant. Tape completely covered the complainant's face, which the neighbor removed from her mouth. She also testified that the complainant was hysterical and crying and said that her mother's boyfriend had raped her.
 
 
 11
 A Chicago police officer testified that he responded to the rape report at the complainant's address. He testified that he found water running in the bathroom of her apartment and noticed no signs of forced entry. The victim was in a state of shock and appeared to have been crying. Her wrists were red, tape was in her hair and on one wrist, and tape marks were on her legs and ankles. The victim said that London was the perpetrator.
 
 
 12
 The hospital emergency room doctor testified that the complainant was upset, withdrawn, and appeared to have been crying. Aluminized duct tape was wrapped partially around her head, in her hair, and on one of her wrists. Residual adhesive was on her wrists and ankles. Her upper lip was swollen, and her left arm and thigh were bruised. A two centimeter tear was found at the opening of her vagina, and her anus was reddish and lacerated. A vitullo kit was used for vaginal and rectal smears to test for the presence of spermatozoa. A Chicago police micro-analyst examined the vitullo kit and determined that spermatozoa were present in the vaginal smear, but not in the rectal smear.
 
 
 13
 A Chicago police detective arrested defendant at his place of employment on May 7, 1982. He consented to a search of his car, which was loaded with luggage. London said he was leaving for Arkansas that evening. The officer later brought the complainant to the police station, where they examined London's car. In the trunk, they found a pair of suede work gloves and a hunting knife. He touched the complainant's hands with the gloves, and she started to cry and said, "[i]t feels just like them."
 
 
 14
 The complainant's mother testified that she was London's girlfriend. In June, 1981, her ex-husband came to her house and beat London and knocked him out. London required stitches in his nose and head. London filed charges, which were later dismissed. She corroborated the complainant's account of the loss of her keys on March 9, 1982. On May 9, 1982, she received a telephone call from London, asking for her forgiveness. When she inquired, "[h]ow could you do that," he replied, "because John [her ex-husband] had hit him."
 
 
 15
 London testified that he met and began dating the complainant's mother in 1979. He corroborated the account of his beating by the estranged husband and that he had pressed charges against him, which he dropped after his life was threatened. He moved into the mother's home in November 1980, after her divorce became final. On Wednesday, May 5, 1982, he found a note on his steering wheel telling him to "come over to my apartment" at midnight Thursday. Although the note was unsigned and the handwriting unfamiliar, he knew it was from the complainant because "no one else ... would be saying these things to me." He arrived at the victim's apartment at about 11:30 on May 6. According to London's testimony, she let him in and they had sex, but not anal intercourse. They quarreled and she slapped and tried to kick him. The complainant ordered him to leave at about 5:00 a.m. The complainant did not approve of his relationship with her mother. On cross-examination, London admitted that he had initially denied to police that he had been at the victim's apartment that night. In rebuttal, the State entered a stipulation that defendant had pled guilty to felony armed violence on October 28, 1975.
 
 
 16
 The verdict and sentencing followed. London filed a direct appeal to the Illinois Appellate Court for the First Judicial District. The appellate court affirmed London's convictions but vacated his sentence and remanded the case for resentencing. London then filed a petition for post-conviction relief, which was denied by the trial judge without an evidentiary hearing. He appealed again and the appellate court remanded the cause for resentencing and granted London leave to file an amended post-conviction petition. The amended petition was then ruled on by the trial judge and denied on its merits. The appellate court affirmed this decision on the merits. The Illinois Supreme Court then denied London's petition for leave to appeal.
 
 II. DISCUSSION
 A. Ineffective Assistance of Counsel
 
 17
 In raising a claim that a London received ineffective assistance of counsel, London bears the burden of demonstrating that counsel's performance was constitutionally deficient and that the deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668 (1984). The test for effective assistance of counsel has two prongs. First, a defendant must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Id. at 687. Actions of counsel which are matters of trial strategy or tactical decisions will not be reviewed. See Id. at 689.
 
 1. Ineffective Assistance of Trial Counsel
 
 18
 London claims he was denied effective assistance of counsel because of various evidentiary and trial strategy decisions by his attorney. First, as stated above, decisions as to mere trial strategy are not reviewable by this court. However, London's claims would fail even if we were to review the attorney's trial strategy. London claims he wanted his counsel to move to suppress his statements and the evidence taken from the trunk. However, he voluntarily allowed the police to search his trunk. London also wanted his counsel to suppress his admission to the victim's mother. However, since such statement was voluntary, there was likewise no basis to suppress the statement. Thus, London does not show how the alleged errors of counsel prejudiced him.
 
 
 19
 London also claims he was denied effective assistance of trial counsel due to: 1) improper commentary by the trial judge to defense counsel during the trial; 2) the failure of trial counsel to challenge the constitutionality of the statute under which London was convicted; 3) the trial court's limitations of the cross-examination of the victim; and 4) the trial court's denial of his motion to appoint a bar association attorney instead of a public defender. After reviewing the record on these claims, the Illinois Appellate Court held that London "has failed to demonstrate a substantial prejudice to himself without which the outcome would have been different." People v. London, Nos. 1-87-1722 and 1-88-1257, at p. 4. London has likewise failed to demonstrate to this court that he was so prejudiced by his counsel's performance that he was denied a fair trial. Thus, London's claim for ineffective assistance of trial counsel must fail.
 
 
 20
 2. Ineffective Assistance of Appellate Counsel
 
 
 21
 London argues that he received ineffective assistance of appellate counsel because appellate counsel refused to raise the ineffective assistance of trial counsel issue on appeal. However, in Jones v. Barnes, 463 U.S. 745 (1983), the Supreme Court held that an attorney assigned to handle the appeal from a criminal conviction does not have a constitutional duty to raise every issue requested by a defendant if counsel as a matter of professional judgment decides not to present those points. Id. at 751. The Court noted the importance of eliminating weaker arguments on appeal to emphasize the stronger points available, and held that such decision is properly within the discretion of the appellate counsel. Id. at 751-52.
 
 
 22
 In this case, London's appellate counsel explored the claims raised by London and only after finding those claims to be without merit did he inform London that he would not proceed on that issue. The Illinois Appellate Court made a specific finding that "the ineffective assistance of ... appellate counsel [issues] are conclusional, and [petitioner] has failed to demonstrate a substantial prejudice to himself without which the outcome would have been different." People v. London, Nos. 1-87-1722 and 1-88-1257, at p. 4. In this court, petitioner has failed to demonstrate that the state court's findings are not supported by the record. Thus, since London's claims of ineffective assistance of counsel are mere conclusions and are not supported by the record, London's claim must fail.
 
 B. Evidentiary Rulings
 
 23
 London claims that the trial court erred in permitting his impeachment with a prior conviction. However, it is clear that habeas corpus courts do not sit to review mere evidentiary rulings. The collateral habeas proceeding was not designed to provide state prisoners an additional appeal. Unless London can demonstrate an erroneous evidentiary ruling that directly infringes a particular provision in the Bill of Rights, or which resulted in a fundamentally unfair trial, London has not alleged a federal question for habeas review. Cramer v. Fahner, 683 F.2d 1376, 1385 (7th Cir.1982).
 
 
 24
 Even if this court were to reach the merits, London's claim must fail. The law is well settled in Illinois that a conviction punishable by more than one year in prison and which is less than ten years old is admissible for impeachment unless the prejudice outweighs the probative value. People v. Montgomery, 268 N.E.2d 695 (Ill.1971). See also People v. Leonard, 415 N.E.2d 358 (Ill.1980). The defendant bears the burden of proving that the probative value of the prior crimes was substantially outweighed by the danger of prejudice. Leonard, 415 N.E.2d at 359.
 
 
 25
 In this case, the appellate court found that the trial court properly admitted the evidence where the petitioner failed to sustain his burden of demonstrating that prejudice outweighs the probative value. The appellate court then held that in any event, any potential error was harmless given the strength of the evidence. London has presented no evidence to this court to show that such ruling infringed his constitutional rights or resulted in an unfair trial. For these reasons, London's claim that the trial court erred in permitting his impeachment with a prior conviction also fails.
 
 C. Due Process
 
 26
 London claims he was denied due process because the Illinois Supreme Court and Illinois Appellate Court did not address the issues presented to them. London, however, has waived this claim by failing to raise it in any state court proceeding. United States ex rel. Spurlark v. Wolff, 699 F.2d 354, 361-62 (7th Cir.1983). Even if we were to reach this issue, however, we conclude that such claim is without merit because the Illinois courts properly handled the claims before them. London claims that the trial court dismissed his petition for post-conviction relief without holding a hearing. However, that is within the discretion of the court and it does not mean that the issues raised were not properly addressed. The appellate court conducted a full review of London's claims and affirmed the trial court's dismissal of the petition. London has simply failed to show that any prejudice resulted. London also suggests that he was denied due process because the Illinois Supreme Court denied his petition for leave to appeal. The granting of a petition for leave to appeal is discretionary with the court and such action cannot form the basis of a due process violation. Thus, London has failed to demonstrate that his due process rights have been violated.
 
 D. Miscellaneous Motions
 
 27
 London has also filed two requests for production of documents, a motion to file a photograph, a motion to compel, and a motion for an independent expert microanalyst to perform tests. While we recognize that discovery may be allowed in habeas corpus proceedings, "it is clear that there was no intention to extend to habeas corpus, as a matter of right, the broad discovery provisions ... [permitted] in ordinary civil litigation." Harris v. Nelson, 394 U.S. 286, 295 (1969), reh'g denied, 394 U.S. 1025 (1969). London's requests in this case are duplicative and deal with evidentiary issues which have already been addressed in the state court proceedings. Permitting such discovery to proceed would not aid this court in ruling on the habeas petition. Moreover, as to the motion for summary judgment on the issue of perjury of the complainant, London has waived that argument by failing to raise it on appeal to the Illinois courts.
 
 III. CONCLUSION
 
 28
 For the foregoing reasons, we deny petitioner Lloyd London's petition for habeas corpus. We also deny London's motion for summary judgment, two requests for production of documents, motion to file a photograph, motion to compel, and motion for independent expert microanalyst tests.
 
 
 29
 --------/s/ Wayne R. Andersen
 
 
 30
 --------WAYNE R. ANDERSEN
 
 United States District Judge
 Dated: Aug. 27 1992
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record