**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230658-U

Order filed April 11, 2025
_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0658 Circuit No. 20-CF-1097 |
| | ) | |
| JAMES ROBERT NEAD, | ) ) | Honorable Brian F. Telander, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Anderson and Bertani concurred in the judgment.
_____

**ORDER**

¶ 1     *Held*:  The circuit court did not err in denying defendant's motion to suppress the victim's photograph lineup identification of defendant.

¶ 2     Defendant, James Robert Nead, appeals from his convictions for aggravated criminal sexual abuse, solicitation to meet a child, and traveling to meet a child. Defendant argues the Du Page County circuit court erred by not granting his motion to suppress the photograph lineup. We affirm.

I. BACKGROUND

¶ 4 Defendant was charged with three counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2018)), solicitation to meet a child (*id.* § 11-6.6(a)), and traveling to meet a child (*id.* § 11-26(a)). The charges alleged defendant used Snapchat to coerce the 13-year-old victim, N.K., to meet him. Defendant, who was at least five years older than N.K., traveled to meet N.K., placed his hands on N.K.'s breasts and vagina, and put his mouth on N.K.'s breasts.

¶ 5 Defendant filed a motion to suppress a photograph lineup and any in-court identification of defendant by N.K. The motion alleged the photograph lineup presented to N.K. was impermissibly suggestive primarily because defendant's photograph was "before a bright blue background while wearing a different facial expression, in tighter frame, misaligned, and in different proportion from the other five [photographs]." Besides the lineup itself, defendant submitted evidence of a subsequent lineup in support of his motion. The second lineup, introduced over the State's objection, was conducted by a different lineup administrator for a second alleged victim involving unrelated acts. It used the same six photographs as the lineup at issue. They were turned black and white and presented in a different order. The second lineup report gave no indication that the second victim was able to identify defendant.

¶ 6 At a hearing on the motion to suppress, Detective Paul Elliott of the Naperville Police Department testified he identified defendant as a suspect in the course of his investigation. Elliott did not have a photograph of defendant available, so he obtained defendant's driver's license photograph through the Secretary of State's database. Elliott compiled a lineup using a software system which generated photographs of five other participants from the police booking records based upon basic physical characteristics. Elliott ensured the other participants matched the general description of the suspect provided by N.K. Detective Ann Quigley of the Naperville Police

Department administered the photograph lineup. Quigley was otherwise uninvolved in the investigation. Quigley received the lineup from Elliott and presented it to N.K. without making any changes. Quigley would not make any changes to a lineup, even if she noticed a photograph stood out, as she was only to take the photographs as they were given to her. Neither detective changed the position of the photographs in the array.

¶ 7    The court agreed that defendant's background was a brighter blue shade, he wore a different facial expression, and both defendant's head and actual photograph were slightly larger. The court also determined defendant and the other participants in the array shared important similarities, including their age, hair, lack of facial hair, skin color, and clothing. The court noted that even though three of the other participants' photographs had similar backgrounds, the other two were each different. The court granted the State's motion for directed finding and denied defendant's motion to suppress.

¶ 8    The case proceeded to a jury trial where N.K. testified she was 13 years old in June 2019. On either June 26 or 27, 2019, she received a message on Snapchat from an account with the username "jamesrnx." The user said he was 16 or 17 years old. He asked N.K. to send him nude photographs of herself, and she sent him a photograph of her breasts. The user sent N.K. photographs of his chest and penis. The user then sent a message to N.K. saying that if she did not meet with him in person, he would send her nude photographs to everyone she knew, including her parents.

¶ 9    On June 28, 2019, N.K. received a message from jamesrnx at 1 a.m. Jamesrnx stated he knew where N.K. lived. N.K.'s location was visible on Snapmap. N.K. had her Snapmap set to "public" so anyone who used Snapmap could see where she lived. N.K. walked down the street from her house to a plaza. A small grey sedan pulled up to the plaza. N.K. identified defendant in

3

court as the person she met that night. When N.K. entered the vehicle, she was able to view defendant's face because the vehicle's inside lights were on and defendant was facing her. Defendant drove to another neighborhood. While driving, defendant used his hand to touch both of N.K.'s breasts and her vagina inside her underwear. N.K. believed defendant drove around while touching her for 20 to 30 minutes. When they returned to the plaza, defendant put his mouth on N.K.'s breasts. They were parked in the plaza for approximately five minutes.

¶ 10        When N.K. returned home, she blocked jamesrnx on Snapchat. N.K. took a shower but did not wash her clothes. N.K. did not save the photographs that jamesrnx sent to her. N.K. gave the police her phone and submitted to a sexual assault examination the night of the incident. N.K. described the suspect as approximately 16 to 19 years old, with short brown hair, and a "long thin face." N.K. did not notice any distinguishing marks, tattoos, or facial hair. N.K. testified she participated in a police photograph lineup on August 28, 2019. N.K. identified defendant during the initial lineup.

¶ 11        Elliott testified they performed a forensic extraction of N.K.'s cell phone. They were unable to recover photographs or conversations between N.K. and jamesrnx. The police obtained records for the user account jamesrnx. Included in the records were: multiple photographs of an exposed male abdomen sent between June 26 to 28, 2019; evidence of communications that occurred between jamesrnx and N.K.'s Snapchat accounts for the dates of June 27 to 28, 2019; and information regarding an email and Internet protocol (IP) address associated with the account. The email associated with the account was jamesnead13@gmail.com. From the IP address, Elliott identified a physical address in Naperville. The State further introduced evidence that the GPS data from N.K.'s phone showed her moving away from the area of her home at 1:05 a.m. on June 28, 2019, before returning at approximately 2 a.m.

¶ 12    DNA testing was performed, and defendant could not be excluded from the DNA contained on N.K.'s underwear. However, an expert testified that, given the low level recovered, the DNA could have come from direct or indirect contact, and N.K. could have transferred the DNA by spending time with defendant and then later changing her clothes.

¶ 13    Defendant was found guilty of all counts. Defendant filed a motion for a new trial. Relevant to this appeal, defendant argued the photograph array was impermissibly suggestive because it "stood out from the rest of the fillers in the photo array, most notably based on the bright-blue background ***. The Defendant also relies on points of undue suggestiveness raised in his [pretrial] motion, and arguments made during the hearing." The court denied the motion.

¶ 14    Defendant was sentenced to six years' imprisonment for each of the three counts of aggravated criminal sexual abuse, two years' imprisonment for the solicitation to meet a child, and four years' imprisonment for traveling to meet a child, to be served concurrently.

## II. ANALYSIS

¶ 15    On appeal, defendant argues the circuit court erred by not granting defendant's motion to suppress the photograph lineup. While the State initially argues defendant forfeited this issue, we find that he adequately preserved the issue for review through his motion to suppress and motion for a new trial, which specifically repeated some arguments previously raised and otherwise incorporated the remaining arguments by reference to his written motion to suppress the photographic lineup. See *People v. Brown*, 150 Ill. App. 3d 535, 540 (1986).

¶ 16    When reviewing a circuit court's ruling on a motion to suppress, we will not reverse the circuit court's factual findings unless they are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). The ultimate determination on the motion to suppress ruling is reviewed *de novo*. *Id.* The defendant bears the initial burden of establishing the

identification procedure was impermissibly suggestive. *People v. Enis*, 163 Ill. 2d 367, 398 (1994). Where a pretrial lineup is impermissibly suggestive such that it produces "a very substantial likelihood of irreparable misidentification," evidence of the lineup and subsequent identifications must be excluded. (Internal quotation marks omitted.) *People v. Ramos*, 339 Ill. App. 3d 891, 897 (2003).

¶ 17    Due process is offended where the pretrial identification procedure strongly suggests to the witness to select the defendant. *People v. Johnson*, 149 Ill. 2d 118, 147 (1992). Courts look to the totality of the circumstances when considering whether a lineup is impermissibly suggestive. *Id.* Here, defendant argues the lineup was impermissibly suggestive because defendant's face is slightly larger, his photograph is the only one with teeth showing, and his background is the only one that is bright blue. For the reasons that follow, we disagree.

¶ 18    Initially we observe that Elliott properly obtained the available photograph of defendant and then created the lineup using basic physical characteristics. As a result, the other participants and defendant shared a number of physical similarities, including age, hair, skin color, clothing, and lack of facial hair. The detectives further ensured the other participants matched the general description provided by N.K. and employed the necessary procedure, in accordance with the statute. 725 ILCS 5/107A-2 (West 2018).

¶ 19    Turning to the differences argued by defendant in support of its suggestibility argument, we are cognizant that lineup participants need not be identical or near identical to the defendant. *People v. Faber*, 2012 IL App (1st) 093273, ¶ 57. Differences in appearance, even substantial differences, between defendant and the other lineup participants goes to the weight of the evidence, not its admissibility. *People v. Saunders*, 220 Ill. App. 3d 647, 665-66 (1991). Courts have repeatedly held that lineup procedures are not impermissibly suggestive even where a defendant

6

differs from the other participants in a notable way. See, *e.g.*, *People v. Kubat*, 94 Ill. 2d 437, 472 (1983) (the defendant was the only one wearing glasses); *People v. Smith*, 160 Ill. App. 3d 89, 92 (1987) (the defendant had a different hair color from the other participants). Further, "a different format does not automatically render a photo suggestive: it may make it more so or less so. Different need not be equated with suggestive." *People v. Bryant*, 94 Ill. 2d 514, 520 (1983); see, *e.g.*, *People v. Carter*, 2023 IL App (1st) 200091-U, ¶ 98, (the defendant's photograph bore his actual name while all the other participants bore the last name "Jones"). A different background color generally does not render a lineup impermissibly suggestive. *People v. Bahena*, 2020 IL App (1st) 180197, ¶ 37; *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 42.

¶ 20  In reviewing the photographic lineup, we agree with the circuit court that it was not impermissibly suggestive. The brighter blue background, even if notably different, was not suggestive. See *Joiner*, 2018 IL App (1st) 150343, ¶ 42 (noting courts have found photographic lineups proper where defendant's photograph was noticeably darker than the other photographs, had a different background, and was the only image portrayed in color). Further, the other five photographs were not uniform. Three photographs had similar gray backgrounds while the remaining three, including that of defendant, were all unique. See *Bahena*, 2020 IL App (1st) 180197, ¶ 37. The lineup was also not improper even though defendant's head was slightly larger and he was the only participant with his teeth showing. Far more notable and relevant differences have been found nonsuggestive. See *Smith*, 160 Ill. App. 3d at 93. The teeth and head size were only minor differences unrelated to N.K.'s description of defendant and did not suggest to N.K. that she should identify defendant. Even taken together, the differences cited by defendant did not render the lineup improper. See, *e.g.*, *Bahena*, 2020 IL App (1st) 180197, ¶ 37 (the defendant's photograph had a different color background and showed slightly less of his body than the other

7

participants); *People v. Harrell*, 104 Ill. App. 3d 138, 144-45 (1982) (the defendant had different hair length and facial features and defendant's photograph was a different shape and had a different background). Considered in their totality, all three differences only affected the weight of the evidence and not its admissibility.

¶ 21   In coming to this conclusion, we reject defendant's reliance on the altered lineup presented to an unrelated victim. As we have determined that the initial lineup was not suggestive, there was no obligation to adjust the lineup before administering it to N.K.

¶ 22   III. CONCLUSION

¶ 23   The judgment of the circuit court of Du Page County is affirmed.

¶ 24   Affirmed.