THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHAWN
C. MAJORS, Defendant-Appellant.

Fourth District    No. 4—98—0430

Argued July 21, 1999.—Opinion filed November 23, 1999.—Rehearing denied
January 6, 2000.

Daniel D. Yuhas and Lawrence J. Essig (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

C. Steve Ferguson, State's Attorney, of Charleston (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In June 1997, the State charged defendant, Shawn Majors, with several counts of first degree murder for the May 1997 drowning death of Cheryl McRill. In March 1998, after a trial, the jury acquitted defendant of count I, which alleged defendant knew his acts would cause McRill's death (720 ILCS 5/9—1(a)(1) (West 1996)), but found defendant guilty of count II, which alleged defendant knew his acts would create a strong probability of death (720 ILCS 5/9—1(a)(2) (West 1996)), and count III, which alleged defendant killed McRill while committing a forcible felony (720 ILCS 5/9—1(a)(3) (West 1996)). In May 1998, the trial court entered a conviction on count II and sentenced defendant to 45 years' imprisonment. Defendant appeals, arguing (1) his speedy trial rights were violated with respect to counts I and II and his trial counsel was ineffective for failing to move to dismiss the case on speedy trial grounds; (2) his speedy trial rights were also violated with respect to count III, which the State filed February 11, 1998, and his trial counsel was ineffective for failing to move to dismiss the count on that basis; (3) plain error occurred since the public act that modified the statutory provision on automatic fitness hearings (Pub. Act 89—689, § 90, eff. December 31, 1996 (1996 Ill. Laws 3775, 3792)) violates the single subject rule (Ill. Const. 1970, art. IV, § 8(d)), the pretrial record showed he was taking psychotropic medication, and he was not afforded a fitness hearing; (4) the trial court erred by denying defense counsel's requests to give a second degree murder instruction based on provocation and an involuntary manslaughter instruction; and (5) he is entitled to amendment of the written judgment of sentence herein to reflect that his good-time credit should be calculated pursuant to section 3—6—3 of the Unified Code of Corrections (Unified Code) in effect prior to any truth-in-sentencing amendments thereto (730 ILCS 5/3—6—3 (West 1994)). We affirm and remand with directions.

## I. BACKGROUND

On May 1, 1997, Cheryl McRill cashed two checks totaling just under $500. She took her daughter out to breakfast and shopping, spending approximately $100. McRill and her daughter lived together in Mattoon. Later that day, McRill spent several hours with George Vasquez, the father of three of her children. While they were together, McRill consumed several beers. In the early evening, Vasquez returned to his home in Arcola. Late that evening, McRill's daughter returned

home and discovered that her mother was not present. When McRill did not come home the next day, the daughter and others began to search for her. McRill's car was discovered at a local tavern called CJ's, but McRill was not found. Several days later, McRill's body was discovered floating in Lake Paradise near Mattoon. Her purse was later discovered floating in the lake, with the money missing.

Defendant's brother, Scott Majors, testified that he lived with defendant and defendant's wife in a mobile home in Mattoon. On the evening of May 1, 1997, Scott and defendant's wife went out to several bars. As they returned home early in the morning of May 2, 1997, they received a cellular phone call from defendant, asking them to come home right away. Scott described defendant as very intoxicated when they got home. They eventually went to bed and the next morning Scott spoke to defendant, in defendant's wife's presence, about what had happened the night before.

Defendant stated he met McRill at CJ's tavern the night before. They went out to the car defendant was driving that night, and McRill passed out. Defendant went back into the tavern, returning to his car approximately one hour later. McRill then woke up and said she wanted to go somewhere and get high, after which they drove to Lake Paradise. They talked for a while, and McRill then got out of the vehicle and began walking around yelling something. Defendant got out and approached McRill to see what she was saying. McRill was yelling, "Rape!" Defendant stated that one way or another they both ended up in the water, and McRill was still yelling rape. Defendant said he panicked and, to shut her up, dunked her head under the water. When she came back up, she was unconscious. When defendant returned to his car, he noticed McRill's purse. He took approximately $400 out of the purse and threw the purse into the lake.

Defendant's wife substantially confirmed Scott's testimony concerning the statement made by defendant on the morning of May 2. At the request of the police, defendant's half brother, Rick Hall, agreed to secretly record a statement from defendant concerning the incident. In addition, defendant's mother testified about a conversation she had with defendant about the incident. Both the recorded statement and the description of the incident defendant gave his mother substantially conformed to the statement defendant made to his wife and brother Scott. Additional testimony showed defendant had been unable to afford a vehicle shortly before May 1, but that he paid $425 cash for a vehicle on May 2. Also, the forensic pathologist's testimony indicated that prior to death McRill received a blunt-force trauma to the head compatible with multiple blows to the head and a laceration to the nose compatible with contact between the nose and an object that crushed or tore the skin.

Defendant offered no evidence in his own behalf at trial. The jury returned the verdicts noted and the court sentenced defendant as stated. This appeal followed.

## II. ANALYSIS

### A. Speedy Trial Demand as to Counts I and II

■ Defendant argues that his right to a speedy trial was violated and that his attorney was ineffective for failing to move to dismiss on speedy trial grounds. Section 103—5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103—5 (West 1996)) implements the right to a speedy trial guaranteed by the Illinois Constitution. Ill. Const. 1970, art. I, § 8; see *People v. Reimolds*, 92 Ill. 2d 101, 106, 440 N.E.2d 872, 874 (1982). Section 103—5 of the Code, in pertinent part, provides:

> "(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***.
>
> * * *
>
> (d) Every person not tried in accordance with *** this Section shall be discharged from custody ***." 725 ILCS 5/103—5(a), (d) (West 1996).

Accordingly, the State must bring a defendant to trial within the statutory period under the speedy trial statute. *Reimolds*, 92 Ill. 2d at 106, 440 N.E.2d at 875. However, on a motion to dismiss, the defendant has the burden of affirmatively establishing the violation of his right to a speedy trial, and where a delay is attributable to the defendant, the statutory period is tolled. *Reimolds*, 92 Ill. 2d at 106, 440 N.E.2d at 875.

■ Defendant's second claim regarding this issue, that he received ineffective assistance of counsel, must be judged under the two-pronged test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by the Supreme Court of Illinois in *People v. Albanese*, 104 Ill. 2d 504, 526-27, 473 N.E.2d 1246, 1255-56 (1984). To establish ineffective assistance of counsel, a defendant must first demonstrate that his defense counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed the defendant by the sixth amendment. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Second, a defendant must demonstrate prejudice by showing that, but for defense counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. Both prongs of the *Strickland* test must be satisfied before a defendant can prevail on

a claim of ineffective assistance of counsel. *People v. Coleman*, 183 Ill. 2d 366, 397, 701 N.E.2d 1063, 1079 (1998).

■ However, because prejudice is assessed in light of the likelihood of success at trial, if prejudice has not been demonstrated, a reviewing court need not consider whether counsel's performance was deficient. *People v. Pugh*, 157 Ill. 2d 1, 14-15, 623 N.E.2d 255, 261-62 (1993). A court may, therefore, resolve ineffectiveness claims by reaching only the prejudice component. *People v. Erickson*, 161 Ill. 2d 82, 90, 641 N.E.2d 455, 460 (1994); *Albanese*, 104 Ill. 2d at 525-27, 473 N.E.2d at 1255-56. If a claim of ineffective assistance of counsel can more easily be disposed of on the ground of lack of sufficient prejudice, that course should be followed. *People v. Hillenbrand*, 121 Ill. 2d 537, 557, 521 N.E.2d 900, 908 (1988). Applying the prejudice prong to the instant case, defendant must show that, had his counsel moved to dismiss on speedy trial grounds, a reasonable probability exists that the trial court would have dismissed the charges against him.

Defendant was taken into custody on June 18, 1997, and remained in custody thereafter. Trial was originally set for September 30, 1997. On September 16, 1997, defendant requested that trial be delayed. He did not request a continuance to a specific date for a new trial. Rather, he requested that the matter be set for an October 27, 1997, status hearing. At the September 16 hearing, the trial court stated that it wished to discuss the speedy trial issue:

> "THE COURT: I want to get the cards out on the table so everybody shares an understanding and we don't have any confusion down the road.
>
> * * *
>
> THE COURT: I want to be fair here but I think we need to be plain about the issue of the speedy trial.
>
> * * *
>
> THE COURT: I would be happy to give you a trial date today if you would like to have one. I'll try and work with you. That way both sides understand when the next trial is and I can talk to Mr. Majors about that.
>
> * * *
>
> [DEFENSE COUNSEL]: Your Honor, I believe we can stipulate that it is the parties' understanding that the 120[-]day rule—or 120 days is tolled until there is a new trial date set.
>
> THE COURT: And would it be the shared understanding that it's tolled also from the time that trial date is set until the actual trial date occurs?
>
> [PROSECUTOR]: Yes, Your Honor.
>
> [DEFENSE COUNSEL]: Yes. I believe that's what the—
>
> [PROSECUTOR]: I think that's what the law provides also.

[DEFENSE COUNSEL]: I think that's what the case law indicates based on my recent research into the area.

\* \* \*

THE COURT [(Addressing defendant)]: A motion now is in place to continue the trial date, which as I have it was originally September 30. With the motion to continue, it is apparently the shared understanding of the counsel, and I share that understanding as well, that from today's date until the new trial date, you would be giving up the right to insist on a speedy trial. In other words, the 120 days would stop running today and only begin to run again on the jury trial date that's scheduled later. Do you understand those things, Mr. Majors?

[DEFENDANT]: Yes. Your Honor.

THE COURT: Mr. Majors, are you agreeing to all this because you've had a good conversation with [defense counsel] and that's what you want to do?

[DEFENDANT]: Yes, Your Honor.

THE COURT: All right. And is this of your own free will, sir?

[DEFENDANT]: Yes, it is."

On October 27, 1997, a hearing was conducted, and the State suggested that the matter be set for trial on March 31, 1998. Initially, defense counsel agreed to this date. However, defense counsel then stated that defendant had not anticipated such a long delay. Pursuant to the trial court's request, the parties calculated that 91 days of the speedy trial period had elapsed. Defense counsel stated that defendant wished to be tried in the remaining 29 days. Trial was set for November 18, 1997. On November 5, 1997, the court heard the State's motion to reconsider the scheduling of the trial date. The State sought a continuance in part because of the unavailability of a witness. The State's motion alleged that when a defendant requests a continuance of a trial setting, the time for computing for speedy trial purposes is tolled from that time until the new trial date, and that the time between October 27, 1997, and the date a trial was to be scheduled in this case was attributable to defendant. Defense counsel agreed that this appeared to reflect the current status of the various court interpretations. The trial court suggested setting the matter for February 17, 1998. The following exchange then occurred:

"THE COURT: [Defense counsel], that okay with you? Does that satisfy you, Mr. Majors?

[DEFENDANT]: Yes, Your Honor."

On December 19, 1997, defense counsel requested that a hearing on defendant's motion to suppress be continued until January 16, 1998. The trial court granted this motion. Defendant's motion to suppress his statement to police was subsequently granted. On February

11, 1998, the trial court allowed the State to file an additional count (felony murder). On February 13, 1998, the trial court granted defendant's motion to continue the trial until March 10, 1998. Defendant's trial began on that date.

Defendant's current arguments concerning a speedy trial violation center on whether he was entitled to the November 18 trial setting. He asserts that, at the October 27 status hearing, he had the right to insist that the time remaining on the speedy trial clock be calculated and he then be granted a trial within the time remaining, even though the original trial date had been continued on his motion without requesting a new trial date. His insistence on such a setting was initially agreed to by the trial court. However, on reconsideration pursuant to the State's motion, the trial court reset the matter at a date acceptable to the State—and acceptable to defendant at that time.

■ We find defendant intelligently and knowingly waived the right to a speedy trial when he moved for a continuance of the September 30, 1997, trial date. Moreover, where he did not request a continuance to a certain date, all of the time between the motion for continuance and the next trial setting is attributable to defendant. *People v. Baker*, 273 Ill. App. 3d 327, 330, 652 N.E.2d 858, 861 (1995). We find no authority for the proposition that a defendant can make an open-ended motion for a continuance, requesting only that the matter be scheduled for a status hearing, and then unilaterally halt the tolling of the speedy trial clock. Nor has defendant cited any such authority. Moreover, we find that granting defendants such a right would unduly instill in defendants the ability to undermine and disrupt the presentation of the State's case.

The potential for abuse if such were the rule is readily apparent in the instant case. On September 16, defendant requested a continuation of his trial date and clearly and unequivocally agreed "that from today's date until the new trial date, [he] would be giving up the right to insist on a speedy trial. In other words, the 120 days would stop running today and only begin to run again on the jury trial date that's scheduled later." However, at the hearing on October 27, he attempted to withdraw this agreement and demand a trial within the time then remaining on the speedy trial clock. That the trial court initially granted this request did not elevate it to a right. If such a right were to exist, a defendant with two days left on the speedy trial clock could move for an open-ended continuance, agree that the speedy trial clock would be tolled until the rescheduled date of his trial, and then at any subsequent time simply change his mind and insist on being tried on two days' notice.

The right to a speedy trial is not a sword to be used to extricate

oneself from criminal charges. It is a shield to protect the accused from unjust and prejudicial delays occasioned by the State. *People v. Tetter*, 42 Ill. 2d 569, 576, 250 N.E.2d 433, 437 (1969); *People v. Brown*, 117 Ill. App. 2d 97, 103, 253 N.E.2d 140, 143 (1969). Once the State chose to bring charges against defendant, he had the right to compel the State to bring him to trial within the time prescribed by the speedy trial statute. Defendant also had the right to seek a continuance if necessary to prepare his defense, as was alleged when defendant sought a continuance of the original trial date. However, defendant did not have the right to seek an open-ended continuance, thus tolling the running of the statute, and then unilaterally withdraw his acquiescence to that tolling and demand a trial within the remaining time.

Because we find that defendant's right to a speedy trial was tolled, we necessarily conclude that, had his attorney moved to dismiss the charges on speedy trial grounds, the motion would have been denied. Therefore, defendant has failed to establish the prejudice prong under *Strickland* and his ineffective assistance of counsel claim must fail.

## B. Speedy Trial as to Count III

■ On November 5, 1997, the trial court rescheduled defendant's trial for February 17, 1998. On February 11, 1998, the trial court allowed the State to file an additional count, the felony murder charge. Defense counsel objected to the filing of the additional count, claiming the defense would be unduly prejudiced by the short amount of time remaining before trial. Because the new count was based on the same factual allegations already known to the defense, the trial court denied the motion. On February 13, 1998, the trial court granted defendant's motion to continue the trial until March 10, 1998, the date on which trial was held. On appeal, defendant claims the filing of count III violated his speedy trial rights and that defense counsel was ineffective for failing to move to dismiss count III on speedy trial grounds.

Defendant cites *People v. Stanley*, 266 Ill. App. 3d 307, 309-10, 641 N.E.2d 1224, 1226 (1994), for the proposition that where the State files new and additional charges arising from the same facts as the original charge, and the State had knowledge of these facts at the commencement of the prosecution, the time limit within which trial must begin upon the new charges is the same as for the original charges. Moreover, any continuances obtained in connection with the original charges cannot be attributed to the new charges. *Stanley*, 266 Ill. App. 3d at 310, 641 N.E.2d at 1226.

We note that there is a split of authority as to the validity and reach of the *Stanley* decision. See *People v. Gooden*, 296 Ill. App. 3d 205, 208-11, 694 N.E.2d 215, 217-19 (1998) (and cases cited therein);

*People v. Kuchan*, 219 Ill. App. 3d 739, 742-46, 579 N.E.2d 1054, 1055-58 (1991). However, given the disposition of the proceedings below, we find it unnecessary to reach this issue. No conviction was entered on the jury's verdict with regard to the felony murder count. Defendant was convicted of and sentenced on the verdict on count II only. Therefore, the question of whether or not count III was filed properly is moot. See *People ex rel. Sklodowski v. Illinois*, 162 Ill. 2d 117, 130, 642 N.E.2d 1180, 1185 (1994); *People v. Hemphill*, 230 Ill. App. 3d 453, 468, 594 N.E.2d 1279, 1288-89 (1992).

## C. Defendant's Entitlement to Fitness Hearing: Single Subject Rule Challenge to Public Act 89—689

At a pretrial bond hearing, it was revealed that defendant was taking several medications prescribed by a psychiatrist. These medications included a mood stabilizer, an anxiety and anger drug, and a sedative. The trial court sentenced defendant in May 1998 for the offense, which occurred in May 1997. Prior to December 31, 1996, the fitness statute under the Code of Criminal Procedure of 1963 provided that a defendant who was receiving psychotropic drugs or other medications under medical direction was entitled to a hearing on the issue of his fitness while under medication. *People v. Brandon*, 162 Ill. 2d 450, 456, 643 N.E.2d 712, 715 (1994). This provision was amended by Public Act 89—689 (Pub. Act 89—689, § 90, eff. December 31, 1996 (1996 Ill. Laws 3775, 3792)), to provide that a criminal defendant who is receiving psychotropic drugs is entitled to a fitness hearing only when the court finds a *bona fide* doubt of the defendant's fitness. Compare 725 ILCS 5/104—21 (West 1996), with 725 ILCS 5/104—21 (West Supp. 1995); see also *Johnson v. Edgar*, 176 Ill. 2d 499, 505, 680 N.E.2d 1372, 1375 (1997). Defendant argues, however, that Public Act 89—689 violates the single subject rule of article IV, section 8(d), of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). Because of the alleged invalidity of this act, defendant argues he was entitled to a fitness hearing pursuant to the preexisting statute before standing trial on these charges. Therefore, he requests that this matter be remanded for a fitness hearing and new trial.

■ Article IV, section 8(d), of the Illinois Constitution of 1970, in pertinent part, provides that "[b]ills, except bills for appropriations and for the codification, revision[,] or rearrangement of laws, shall be confined to one subject." Ill. Const. 1970, art. IV, § 8(d). "[T]he single subject rule ensures that the legislature addresses the difficult decisions it faces directly and subject to public scrutiny, rather than passing unpopular measures on the backs of popular ones." *Johnson*, 176 Ill. 2d at 515, 680 N.E.2d at 1379.

The supreme court recently revisited the proper application of the single subject rule in *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341 (1999). There, the court determined that the subjects contained within one legislative enactment do not need to relate to each other. Nor are the various subjects of the enactment required to relate to a single, overall subject in any substantive manner. Therefore, an act that, among other provisions, amends the definition of "dependent beneficiary" under the Teachers Retirement System (40 ILCS 5/16—101 *et seq.* (West 1998)), requires screening of persons seeking admission to nursing homes to determine their need for services, and amends the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 1998)) to exempt children placed with relatives pursuant to the Child Care Act of 1969 (225 ILCS 10/1 *et seq.* (West 1998)), does not violate the single subject requirement where all of these changes were enacted to bring the operation of various state agencies into compliance with the state budget. "Because all [of] the provisions in Public Act 89—21 have a natural and logical connection to the subject of implementation of the state's budget for the 1996 fiscal year, there is no single subject violation. That is all that the single subject rule requires." *Arangold*, 187 Ill. 2d at 354.

Illinois law has long followed the view stated in *People ex rel. Ogilvie v. Lewis*, 49 Ill. 2d 476, 487, 274 N.E.2d ·87, 94 (1971), quoting *People ex rel. Gutknecht v. City of Chicago*, 414 Ill. 600, 607-08, 111 N.E.2d 626, 632 (1953), on the single subject rule:

" 'The term "subject" is comprehensive in its scope and may be as broad as the legislature chooses, so long as the matters included have a natural or logical connection. An act may include all matters germane to a general subject, including the means reasonably necessary or appropriate to the accomplishment of legislative purpose. Nor is the constitutional provision a limitation on the comprehensiveness of the subject; rather, it prohibits the inclusion of "discordant provisions that by no fair intendment" can be considered as having any legitimate relation to each other." (*People ex rel. City of Chicago v. Board of County [Commissioners]*, 355 Ill. 244[, 247, 189 N.E. 26, 27 (1934)].)' "

Accord *Arangold*, 187 Ill. 2d at 352 (citing cases).

Public Act 89—689 contains approximately 18 substantive sections. In addition to amending the fitness statute, the act (1) amends the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/31—6, 31—7 (West 1994)) by expanding the definitions of "escape" and "aiding escape"; (2) amends the Unified Code (730 ILCS 5/1—1—1 *et seq.* (West 1994 & Supp. 1995)) concerning unclaimed accounts of committed persons; (3) amends the Court of Claims Act (705 ILCS 505/1

through 29 (West 1994 & Supp. 1995)) by providing for a cost-of-living increase for persons who unjustly spent time in prison; (4) amends factors for imposition of an extended-term sentence and factors in aggravation for sentencing; (5) provides that it is a criminal offense to maliciously harm a guide dog; (6) provides for limited civil immunity for persons who obtain blood or urine for evidentiary purposes under the Illinois Vehicle Code (625 ILCS 5/1—101 *et seq.* (West 1996)) upon the request of a law enforcement officer; (7) makes minor changes to the county juvenile impact incarceration program; (8) adds another type of authorized disposition for wards of the court under the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1996)); (9) amends the Criminal Identification Act (20 ILCS 2630/0.01 through 10 (West 1994)); (10) provides for competitive bidding of services for the State Appellate Defender; (11) reenacts a statutory provision establishing procedures for the Prisoner Review Board; (12) amends the restitution provisions of the Unified Code; (13) enacts a new provision allowing for the admissibility of prior statements when a witness refuses to testify in criminal proceedings; (14) amends the definition of a hate crime; (15) amends the penalty provision for the offense of solicitation of murder; (16) authorizes the Department of Corrections (DOC) to develop a program for tracing inmates in regard to gang affiliation; (17) changes the reporting date for the truth-in-sentencing commission; and (18) requires DOC to prohibit the use of curtains on cells.

In *People v. Pitts*, 295 Ill. App. 3d 182, 691 N.E.2d 1174 (1998), this court reviewed Public Act 89—404 (Pub. Act 89—404, eff. August 20, 1995 (1995 Ill. Laws 4306)) for compliance with the single subject rule. Public Act 89—404 contained 10 substantive provisions, 9 of which concerned such matters as the authority of sheriffs and municipal police officers, modification of the insanity defense, disbursement of proceeds from forfeitures under the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 1996)) and Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 1996)), authority of law enforcement officers beyond that officer's jurisdiction, prohibition of jury trials for certain forfeiture cases, amendments to truth-in-sentencing legislation, modification of insanity defense procedures, and the nonapplicability of homestead exemptions to drug asset forfeitures. We found that all of these subjects concerned "some aspect of the criminal justice system" and thus fell within the designation of one "subject" in the context of a single subject analysis. *Pitts*, 295 Ill. App. 3d at 188-89, 691 N.E.2d at 1178-79. It was only the tenth subject, concerning hospital liens on civil causes of action of injured persons, that caused us to find that Public Act 89—404 violated the single subject rule.

■ As with the first nine provisions of Public Act 89—404, in the

instant case the State argues that all of the provisions of Public Act 89—689 properly fall under the subject "criminal justice system." We agree. All of the provisions of this act have a natural or logical connection to the criminal justice system. The provisions define offenses, impact the determination of penalties, and relate to procedures for investigation, prosecution, incarceration, and appeals. Even the granting of limited civil immunity for hospital personnel relates to the criminal justice system because it is limited to those personnel who obtain blood or urine for evidentiary purposes under the Illinois Vehicle Code upon the request of a law enforcement officer. An act may include all matters germane to a general subject, including the means reasonably necessary or appropriate to the accomplishment of legislative purpose. *Arangold*, 187 Ill. 2d at 352, quoting *Ogilvie*, 49 Ill. 2d at 487, 274 N.E.2d at 94. Public Act 89—689 does not violate the single subject rule of article IV, section 8, of the Illinois Constitution.

## D. Second Degree Murder Instruction

■ At the close of the evidence in this matter, defendant requested a second degree murder instruction pursuant to section 9—2 of the Criminal Code, which provides:

> "(a) A person commits the offense of second degree murder when he commits the offense of first degree murder *** and either of the following mitigating factors are present:
>
> (1) At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed." 720 ILCS 5/9—2 (West 1996).

Citing *People v. Petty*, 160 Ill. App. 3d 207, 210, 513 N.E.2d 486, 488 (1987), defendant argues that an instruction based on provocation may be tendered when the evidence demonstrates an intense passion in the defendant arising from substantial physical injury or assault, including mutual quarrel or combat. In addition, defendant cites *People v. Leonard*, 83 Ill. 2d 411, 420, 415 N.E.2d 358, 363 (1980), for the proposition that an instruction based on provocation is appropriate where the homicide is committed in a sudden rage of passion engendered by adequate provocation and not the result of malice conceived before the provocation. While defendant's citations to the law are accurate, they are of no support to his claim that the trial court erred in denying the second degree murder instruction. The "substantial physical injury or assault" in *Petty*, 160 Ill. App. 3d at 210, 513 N.E.2d at 488, included not only verbal abuse, but also the victim striking out at the defendant as well as other evidence of a mutual struggle. In *Leonard*, 83 Ill. 2d at 420, 415 N.E.2d at 363, the

"adequate provocation" was a mutual physical altercation in which the defendant was injured before his victim was killed. In the instant case, McRill repeatedly shouted "Rape!" while walking away from defendant. Defendant exited his car and followed her to see what she was screaming and then killed her to keep her quiet. Not one scintilla of evidence suggests any other provocation in this case.

In *People v. Garcia*, 165 Ill. 2d 409, 651 N.E.2d 100 (1995), the supreme court responded to the argument that a trial court had erred by refusing to admit into evidence the words spoken by a victim before being shot by the defendant. In that case, the defendant argued that the evidence of the words spoken by her estranged husband, the victim, could have sustained the giving of a second degree murder instruction. Her husband allegedly said he wanted the defendant to come back and live with him; he did not mind if the defendant was sleeping with her new boyfriend so long as she was getting paid for it and the boyfriend did not mean anything to her; and he, the husband, only gave defendant money and attention in return for sexual favors. The supreme court found any error to be harmless because the words could not have risen to the level of "serious provocation" required for a second degree murder conviction:

> "The only categories of provocation recognized by this court are substantial physical injury or substantial physical assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse. ***
>
> The serious provocation category relevant in the instant case is 'mutual quarrel or combat.' By mutual combat, mere words are not contemplated. Words, in and of themselves, no matter how vile, can never constitute serious provocation such that second degree murder should be found instead of first degree murder." *Garcia*, 165 Ill. 2d at 429-30, 651 N.E.2d at 110.

More specifically, in *People v. Fickett*, 204 Ill. App. 3d 220, 230, 562 N.E.2d 238, 244 (1990), the court found that the threat to report an incident of mutual sexual relations as rape was not sufficient provocation to reduce an offense from murder. We use an abuse of discretion standard when reviewing a trial court's decision on whether to give a tendered jury instruction. *People v. Jones*, 175 Ill. 2d 126, 131-32, 676 N.E.2d 646, 649 (1997). Based on the evidence in this case, we find that the trial court did not abuse its discretion in refusing an instruction on second degree murder.

### E. Involuntary Manslaughter Instruction

■ Defendant next asserts the trial court erred when it refused to give an involuntary manslaughter instruction under section 9—3 of the Criminal Code. 720 ILCS 5/9—3 (West 1996). Defendant notes the

evidence showed he was intoxicated on the night of the killing and that the trial court gave an instruction on voluntary intoxication. Citing *People v. Wright*, 111 Ill. 2d 18, 488 N.E.2d 973 (1986), defendant argues that an instruction based on involuntary manslaughter is appropriate when the evidence demonstrates the defendant is intoxicated.

In *Wright*, the supreme court approved of a manslaughter conviction for a defendant who shot and killed her daughter. However, the instruction was supported by more than the mere intoxication of the defendant. The evidence showed that, on the day of the killing, the defendant had been drinking and was intoxicated through the combined effects of the alcohol and medication. She awoke from an alcohol-induced sleep when she heard noises downstairs. Forgetting that her daughter was in the house, she went to the top of the stairs with a gun and asked who was there. Her daughter appeared and asked why she was holding a gun. The gun discharged, killing her daughter. The defendant testified she thought the gun was pointed toward the wall and that she had not intended to fire the weapon or to kill her daughter.

The suggestion that the *Wright* opinion mandates an involuntary manslaughter instruction whenever the evidence shows that the defendant was intoxicated at the time of the offense was rejected by the court in *People v. Presley*, 230 Ill. App. 3d 77, 595 N.E.2d 606 (1992). After reviewing the *Wright* decision, the *Presley* court stated:

"In the instant case, we do not have a situation where defendant administered one or two blows that might have unexpectedly caused Bundy's death. Defendant admitted that he and Friday beat Bundy for a period of 15 to 20 minutes, while holding him down so that he could not escape. ***
***

Defendant here seeks to use his alleged intoxication to support his refused involuntary manslaughter instruction. However, we reject that argument. Although there was evidence of heavy drinking by defendant, it is clear from the evidence that defendant knew what he was doing during that evening." *Presley*, 230 Ill. App. 3d at 87-88, 595 N.E.2d at 612-13.

Similarly, in *People v. Whitt*, 140 Ill. App. 3d 42, 49, 487 N.E.2d 1246, 1251 (1986), the court held that in cases where a defendant voluntarily and willfully commits an act that has the natural tendency to cause death or great bodily harm, an involuntary manslaughter instruction is not warranted. The supreme court has stated that when evidence is in the record that, if believed by the jury, would reduce the crime of murder to manslaughter, an instruction defining the lesser crime should be given. However, an involuntary manslaughter instruc-

tion should not be given where the evidence clearly shows that the homicide was murder. *People v. Foster*, 119 Ill. 2d 69, 87, 518 N.E.2d 82, 89 (1987).

In the instant case, the evidence showed defendant left his vehicle and approached McRill to see what she was saying. He then struggled with her in the lake, inflicting multiple blunt trauma blows to her head and face. Defendant then held McRill's head underwater to keep her quiet and kept her head underwater until she quit moving. Defendant then took McRill's money and threw her purse into the lake. This evidence gives no support for the contention that defendant may have been acting recklessly when he killed McRill. Rather, the evidence shows, as the jury found, that defendant was acting knowingly. Therefore, we conclude that the trial court properly refused to instruct the jury on involuntary manslaughter.

### F. Inapplicability of Truth in Sentencing

Finally, defendant notes that the trial court sentenced him in May 1998 before the Supreme Court of Illinois declared Public Act 89—404 and its truth-in-sentencing provisions unconstitutional for violating the single subject rule of article IV, section 8, of the Illinois Constitution of 1970. *People v. Reedy*, 186 Ill. 2d 1, 12, 708 N.E.2d 1114, 1119 (1999). Therefore, defendant requests that this matter be remanded so that his sentencing order may be amended to reflect that he is entitled to day-for-day credit on his sentence. The State concedes defendant is entitled to day-for-day calculation of credit since the truth-in-sentencing enactment was declared unconstitutional. However, the State notes that defendant's sentencing order makes no mention of good-time credit (either under the truth-in-sentencing provision or day-for-day credit). Arguing that the good-time credit provisions of section 3—6—3 of the Unified Code (730 ILCS 5/3—6—3 (West 1994)) are self-executing, the State suggests that a remand may not be necessary.

We find that the more prudent course is to eliminate any confusion about the nature of defendant's sentence at this early stage. Because the parties are correct that defendant is entitled to calculation of day-for-day credit under section 3—6—3 as it existed prior to any truth-in-sentencing amendments, we remand for entry of an amended judgment of sentence.

### III. CONCLUSION

For all of the reasons stated, we affirm defendant's conviction and remand with directions for the trial court to issue an amended judgment of sentence reflecting that he is entitled to calculation of good-time credit pursuant to section 3—6—3 of the Unified Code prior to

any truth-in-sentencing amendments thereto (730 ILCS 5/3—6—3 (West 1994)).

Affirmed and remanded with directions.

COOK and STEIGMANN, JJ., concur.