NOTICE

Decision filed 02/04/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230504-U

NO. 5-23-0504

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 19-CF-650 |
| | ) | |
| JESSIE JACKSON, | ) | Honorable |
| | ) | Derek J. Girton, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction is affirmed where the State did not violate defendant's statutory right to a speedy trial. Defendant's sentence is vacated and the matter is remanded for a new sentencing hearing, where the trial court improperly sentenced defendant in the absence of a presentence investigation report and without proper admonishments.

¶ 2    Defendant, Jessie Jackson, appeals his conviction and sentence for home invasion, a Class X felony, in violation of section 19-6(a)(1) of the Criminal Code of 2012 (720 ILCS 5/19-6(a)(1) (West 2018)), arguing that the trial court improperly denied his motion to dismiss for a violation of defendant's right to a speedy trial under section 103-5(a) of the Code of Criminal Procedure of 1963. 725 ILCS 5/103-5(a) (West 2022). Defendant also claims that the court improperly sentenced him in the absence of a written presentence investigation report in violation of section

1

5-3-1 of the Unified Code of Corrections. 730 ILCS 5/5-3-1 (West 2022). For the reasons that follow, we affirm defendant's conviction but vacate his sentence and remand for resentencing.

¶ 3                                    I. BACKGROUND

¶ 4     Law enforcement arrested defendant on November 10, 2019. He remained in custody for the entirety of this case. On November 12, 2019, the State charged defendant by information with seven offenses: count I, home invasion—discharged a firearm (Class X) (720 ILCS 5/19-6(a)(4) (West 2018)); count II, home invasion—armed with a firearm (Class X) (*id.* § 19-6(a)(3)); count III, unlawful possession of a weapon by a felon—forcible felony (Class 2) (*id.* § 24-1.1(a)); count IV, unlawful possession of a weapon by a felon (Class 3) (*id.*); count V, violation of order of protection (Class 4) (*id.* § 12-3.4(a)(1)(i)); count VI, violation of order of protection (Class 4) (*id.*); and count VII, domestic battery (Class 4) (*id.* § 12-3.2(a)(1)). A grand jury later indicted defendant of the same offenses.

¶ 5     Following defendant's arraignment on November 26, 2019, the matter was set for trial on February 18, 2020. The trial court asked defense counsel whether he had any objection to the delay in the speedy trial term between the arraignment date and the trial date being attributed to defendant. Defense counsel did not object. Following the arraignment, and over the next 16 months, the case was continued multiple times by defendant or by agreement. Following each continuance, the case was given a future date for a pretrial conference. It was not given a specific date for trial.

¶ 6     On March 22, 2022, defendant made a speedy trial demand. The trial court set the matter for a pretrial conference on April 29, 2022, and for jury trial on May 3, 2022. At the April 29, 2022, pretrial conference, the State moved for a continuance of the May 3 jury setting. The State's motion

was granted over defendant's objection. The matter was reset for a pretrial conference on June 3, 2022, and a jury trial on June 7, 2022.

¶ 7    On June 3, 2022, defendant filed a motion to continue the June 7, 2022, jury setting. The matter was set for a pretrial conference on August 15, 2022, and a jury trial on August 16, 2022. On August 11, 2022, defendant's attorney was allowed to withdraw as counsel, and the public defender was appointed to represent defendant. The pending pretrial conference and jury trial settings were canceled, and the matter was set for a pretrial conference on October 12, 2022. Various delays attributable to defendant occurred until the matter was set for a pretrial conference on April 25, 2023. By that date, defendant retained new private counsel.

¶ 8    On April 25, 2023, defendant appeared in court with counsel. Defense counsel stated that defendant demanded a speedy trial pursuant to statute. Per her calculations, the State had 32 days to bring defendant to trial. Since the 32nd day fell on Saturday, May 27, 2023, she calculated that the last day the State could bring defendant to trial before running afoul of the speedy trial statute would be Tuesday, May 30, 2023, allowing for the Memorial Day holiday. The trial judge stated that his jury calls were filled until July 18, but that he would find a different judge to try the case on May 2, 2023. Both parties agreed that they could be ready on that date.

¶ 9    Later that same morning, the State asked that the case be recalled. Defendant was present via video. The State attempted to discuss the speedy trial issue with the court, and the court told the prosecutor that the court would not calculate the delays attributable to the State, but that if the State wanted a different date, the court would give the State a different date. The prosecutor claimed that a ruling was made during the August 11, 2022, hearing that the speedy trial time would be tolled until the next trial date.[1] The court noted that the State could make this argument

---

[1]This ruling does not appear in the record.

3

after defense counsel filed a motion to dismiss and asked the prosecutor if he thought that the July 18, 2023, setting was within the allowable time frame. The State believed July 18 was within the time the State had to bring defendant to trial. Defense counsel objected to the July 18 trial date, contending once again that the State only had until May 30, 2023, to bring defendant to trial. Over defendant's objection, the trial court set the matter for a pretrial conference on July 13, 2023, and for a jury trial on July 18, 2023.

¶ 10    On June 5, 2023, defendant filed a motion to dismiss, alleging the State violated his statutory right to a speedy trial in violation of section 103-5(a) of the Code of Criminal Procedure of 1963. 725 ILCS 5/103-5(a) (West 2022). In the motion, defendant contended that there were more than 120 days of delay attributable to the State, and that the charges should be dismissed. The defendant used two alternative calculations, either of which could lead to the dismissal of the charges. Defendant's first calculation follows: November 10, 2019, to November 26, 2019 (16 days attributable to the State); March 22, 2022, to June 3, 2022 (73 days); and April 25, 2023, to May 26, 2023 (31 days); for a total of 120 days attributable to the State as of May 26, 2023. Defendant's second calculation follows: November 10, 2019, to November 26, 2019 (16 days attributable to the State); March 22, 2022, to June 3, 2022 (73 days); and May 2, 2023, to June 2, 2023 (31 days); for a total of 120 days attributable to the State as of June 2, 2023. The State counted the delays differently: November 10, 2019, to November 26, 2019 (16 days);[2] and April 29, 2022, to June 7, 2022 (32 days);[3] for a total of 48 days attributable to the State. The State contended that the period from April 25, 2023, to July 18, 2023, was attributable to defendant, arguing that

[2]Both parties agree that the State mistakenly calculated this period as 60 days in its pleadings before the trial court, adding 44 days of State attributable delay to its calculations. For the sake of clarity, we will deduct these 44 days from the State's subsequent calculations.

[3]The State's response to defendant's motion to dismiss first calculated this as 36 days but then deducted 4 days since defendant moved to continue the June 7, 2022, date on June 3. It is unclear how the State calculated 32 days, because April 29—June 3 is 35 days.

following a defendant's motion to continue a case, the speedy trial clock remained tolled until the next trial date. For this reason, the State believed that the July 18, 2023, trial date was well within the 120-day statutory period in which it needed to bring defendant to trial.

¶ 11     Following a hearing on June 8, 2023, the trial court denied defendant's motion to dismiss. In making his ruling, the judge noted that the time starts running when a defendant is taken into custody and continues to run until the preliminary hearing or arraignment date. In Vermilion County, on that date, the parties traditionally agree to the matter being set for a pretrial or status date and agree that this tolls the time in which the State must bring the defendant to trial. If the matter is continued again, the time continues to be tolled until a defendant asks for a trial date. The judge then stated, "At that pretrial where they ask for a trial date, the time starts again to that trial date." The court further explained that if the defense attorney wants a trial date, the court will give the defendant a trial date, but if defense counsel does not think that they will be ready for trial, the matter is put back on the pretrial docket. The court then noted that the time "is still tolled until it gets put back on a trial date, that next trial date. Not—[the time] doesn't start again at that pretrial date. They ask for the next trial [date]. [The time] starts [again] when we get to the next trial [setting]."

¶ 12     Focusing on the hearing of April 25, 2023, when the defendant asked for a trial date, the trial court stated "the time does not start on April 25th. It starts when we get to the next trial [setting]." From the court's perspective, the question then became what was the effect of the State initially agreeing to a trial date of May 2, 2023, but then later that morning asking for a different date. The judge stated:

> "I personally do not find that to be tantamount to a trial date being set and then a motion to continue. That is—it was recalled within a couple of hours to deal with getting a date where both sides were, in fact, going to be ready. The continuance up to that point had been on the defense. It had been continued for almost a year from

5

the trial call when it had last been on the trial call by the defense. They showed up on April 25th, which under our system is perfectly within their rights and announced ready for trial, apparently catching the State somewhat off guard and it took them a couple of hours to sort of regroup and realize [they] wouldn't be ready on that date and [they] needed more time. I do not find that that 2-hour period of time for the State to realize, no, we won't be ready on May 2nd, we can be ready on the July date that you gave us, that that started the clock again and that we are now past the 120. So I will deny the motion. Show the matter continues to stand for trial on July 18th."

¶ 13    On June 29, 2023, the State filed an amended information that added count VIII, home invasion with a deadly weapon, a Class X felony, in violation of section 19-6(a)(1) of the Criminal Code of 2012. 720 ILCS 5/19-6(a)(1) (West 2018).

¶ 14    At the final pretrial conference on July 13, 2023, the parties announced that they reached an agreement whereby the trial would proceed by stipulation as to the evidence on count VIII. The parties further agreed that, if the trial court found defendant guilty, then defendant would receive an 18-year sentence to the Illinois Department of Corrections. The State agreed to dismiss counts I-VII. After reviewing the stipulation and hearing argument, the court found the State met its burden of proof and found defendant guilty of count VIII, home invasion.

¶ 15    The parties agreed to proceed immediately to sentencing. The State and defense counsel both stated that they waived a presentence investigation report. Pursuant to the agreement of the parties, the court sentenced defendant to 18 years in prison. No posttrial motions were filed.

¶ 16    This timely appeal followed.

¶ 17                                   II. ANALYSIS

¶ 18    On appeal, defendant raises two issues. First, defendant argues that the trial court improperly denied his motion to dismiss for a violation of his right to a speedy trial. Defendant also claims that the court improperly sentenced him in the absence of a written presentence

6

investigation report. For the reasons that follow, we affirm defendant's conviction but vacate his sentence and remand for resentencing.

¶ 19    First, we consider whether defendant's statutory speedy trial right was violated. The parties agree that, as of November 26, 2019, 16 days were attributable to the State. Defendant acknowledges that all delays between November 26, 2019, and March 22, 2022, whether the matter was continued by agreement or by the defense, were attributable to the defendant. Defendant contends that the speedy trial clock began to run again on March 22, 2022, due to his making a speedy trial demand on the record. On March 22, 2022, pursuant to defendant's request for a trial date, the trial court set this matter for a pretrial conference on April 29, 2022, and a jury trial on May 3, 2022. Because the court then granted the State's motion to continue the matter on April 29, 2022, and set this matter for a pretrial conference on June 3, 2022, and a jury trial on June 7, 2022, defendant argues that the 73-day delay from March 22, 2022, until the defendant's next motion to continue was granted on June 3, 2002, is attributable to the State. Defendant's argument is based upon his contention that the speedy trial clock starts running again as soon as the defendant makes or renews a speedy trial demand.

¶ 20    The State disagrees with this calculation. According to the State, the delay from March 22, 2022, until April 29, 2022, was attributable to defendant. The State notes that defendant's speedy trial demand on March 22, 2022, occurred *before* the court suggested a date of May 3, 2022, and that defendant agreed to that date without an objection. For this reason, the State contends that clock did not start running again until its motion to continue was granted on April 29, 2022. See *People v. Cordell*, 223 Ill. 2d 380, 391 (2006) (finding that a "simple request for trial before any 'delay' is proposed is not an equivalent to an objection for the purposes of section 103-5(a)").

Thus, the State contends that it is only responsible for the 35-day delay occurring from April 29, 2022, until defendant's next motion to continue was granted on June 3, 2022.

¶ 21    The parties also disagree on how to attribute the delays occurring after defendant's next speedy trial demand on April 25, 2023. According to defendant, the clock started running again on April 25, 2023, and he is not responsible for any further delay. In the alternative, defendant argues that the speedy trial clock began running again on May 2, 2023, the date the court initially set as a trial date after defendant's renewed demand, and that the delay from May 2, 2023, to July 18, 2023, is attributable to the State since the State appeared later the morning of April 25 and asked for the later date. The State believes that all the time from defendant's April 25, 2023, trial demand through the July 18, 2023, setting is attributable to defendant.

¶ 22    The people of Illinois possess both constitutional and statutory rights to a speedy trial. *People v. Hartfield*, 2022 IL 126729, ¶ 32 (citing U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103(a) (West 2020)). "Although Illinois's speedy trial statutes implement the constitutional right, the statutory and constitutional rights are not coextensive." *Id.* (citing *People v. Sandoval*, 236 Ill. 2d 57, 67 (2010)). Defendant claims only a statutory violation.

¶ 23    The speedy trial statute pertinent to defendant provides, in relevant part, as follows:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered agreed to by the defendant unless he or she objects to delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2022).

Section 103-5(a) provides "a starting point—the date custody begins, and an ending point—120 days later." *Cordell*, 223 Ill. 2d at 390. "The 120-day period in which a defendant must be tried is therefore running during that time. The period is tolled during any time when the defendant causes, contributes to, or otherwise agrees to a delay." *People v. Cross*, 2022 IL 127907, ¶ 20 (citing *People*

*v. Woodrum*, 223 Ill. 2d 286, 299 (2006)). "In other words, a pretrial delay caused or contributed to by defendant or otherwise agreed to by him is excluded from the computation of the 120-day period in which a trial must commence." *Id.*

¶ 24     When a defendant files a motion to dismiss for a speedy trial violation, "the defendant has the burden of affirmatively establishing the violation of his right to a speedy trial, and where a delay is attributable to the defendant, the statutory period is tolled." *People v. Majors*, 308 Ill. App. 3d 1021, 1025 (1999) (citing *People v. Reimolds*, 92 Ill. 2d 101, 106 (1982)). "The trial court's determination as to who is responsible for a delay of the trial is entitled to much deference, and should be sustained absent a clear showing that the trial court abused its discretion." *People v. Kliner*, 185 Ill. 2d 81, 115 (1998). Whether a defendant's statutory right to a speedy trial has been violated is a question of law and is therefore subject to *de novo* review. *People v. Pettis*, 2017 IL App (4th) 151006, ¶ 17.

¶ 25     The outcome of this dispute is dependent upon when the State's clock begins running again following a defense continuance to a date other than a trial setting. Defendant contends that Vermilion County's practice of not starting the clock again until the next trial setting is a local rule that imposes a burden on defendant that is not found in the speedy trial statute. In support of his argument, defendant notes that nothing in the statute requires a case to be put on a trial call or set for a "trial date" for the clock to run, citing to *People v. Atou*, 372 Ill. App. 3d 78 (2007).

¶ 26     In *Atou*, a local rule for Cook County required that the defendant not only make a demand for a speedy trial with the court but also imposed the additional burden on the defendant of serving the State in open court with a copy of the demand. *Id.* at 79. There, the defendant filed a speedy trial demand but had not served the demand on the State in open court as required by the local rule. *Id.* at 80. The defendant later filed a motion to dismiss for a speedy trial violation. *Id.* The trial

court granted the defendant's motion to dismiss for a speedy trial violation, noting "that 'where there is conflict between a state's statute and a local rule, the state's statute clearly takes precedent.' " *Id.* at 81. The appellate court agreed, noting that a local rule promulgated under Illinois Supreme Court Rule 21(a) "may not abrogate, limit or modify existing law" (internal quotation marks omitted) (*id.* at 82) and further finding that section 103-5(b) does not require a defendant to serve the State with a written speedy trial demand in court (*id.* at 83).

¶ 27 Here, defendant argues that the Vermilion County practice of tolling the clock until the next trial setting imposes an additional burden on a defendant to ensure that, following a defense motion to continue, the case is placed back on a specific trial date. We disagree and find *Atou* distinguishable. The court in *Atou* addressed an additional burden being placed on defendant to exercise his speedy trial rights from the outset of the case by requiring the defendant to provide the State with a written copy of the speedy trial demand in open court. The requirement of providing the State with a written copy of the speedy trial demand in open court is not contained in the statute. By contrast, in the instant case, we are confronted with the issue of when the clock starts again following a delay attributable to a defendant as a consequence of the defendant's request for a continuance. In that regard, we find *People v. Majors*, 308 Ill. App. 3d 1021 (1999), instructive.

¶ 28 In *Majors*, on September 16, 1997, 14 days prior to trial, the defendant moved to continue his case and asked that the matter be set for a "status" hearing on October 27, 1997. *Id.* at 1026. The defendant did not ask for a specific date for a trial. *Id.* The parties agreed that the time would toll until the next actual trial date. *Id.* at 1026-27. At the October 27 hearing, the parties agreed that 91 days ran against the State to that point. *Id.* at 1027. Although the parties initially agreed to try the case on March 31, 1998, defense counsel stated that the defendant had not anticipated such a

10

long delay and wished to be tried within the remaining 29 days. *Id.* The matter was set for trial on November 18, 1997. *Id.* On November 5, the trial court heard the State's motion to reconsider the scheduling of the trial date because a witness was unavailable for the November 18 setting. The State's motion averred that when a defendant requests the continuance of a trial setting, the time is tolled and attributable to the defendant from that time until the new trial date. *Id.* Defense counsel "agreed that this appeared to reflect the current status of the various court interpretations [of the speedy trial statute]," and the matter was set for trial on February 17, 1998. *Id.* Defendant stated he was satisfied with the new date. *Id.* On appeal, the defendant argued "that, at the October 27 status hearing, he had the right to insist that the time remaining on the speedy trial clock be calculated and he then be granted a trial within the remaining time." *Id.* at 1028.

¶ 29 The *Majors* court disagreed, finding that defendant knowingly and intelligently waived his right to a speedy trial when he moved to continue the September 30, 1997, trial date. *Id.* The court also noted, because the defendant "did not request a continuance to a certain date, all of the time between the motion for continuance and the next trial setting is attributable to defendant." *Id.* (citing *People v. Baker*, 273 Ill. App. 3d 327, 330 (1995), *abrogated on other grounds by People v. Dockery*, 313 Ill. App. 3d 684 (2000)). Finding "no authority for the proposition that a defendant can make an open-ended motion for a continuance, requesting only that the matter be scheduled for a status hearing, and then unilaterally halt the tolling of the speedy trial clock," the *Majors* court concluded "that granting defendants such a right would unduly instill in defendants the ability to undermine and disrupt the presentation of the State's case." *Id.* The court gave the following example:

> "If such a right were to exist, a defendant with two days left on the speedy trial clock could move for an open-ended continuance, agree that the speedy trial clock would be tolled until the rescheduled date of his trial, and then at any subsequent time simply change his mind and insist on being tried on two days' notice." *Id.*

11

Defendant attempts to distinguish *Majors*, because the defendant therein specifically agreed the delay would be attributable to defendant from the date of the continuance to the rescheduled date of his trial. Defendant argues that he did not agree to toll the speedy trial clock at any point in time. We disagree.

¶ 30    Implicit in each of defendant's motions to continue this case is an agreement, or at the very least an understanding, that the speedy trial clock is tolled. The potential for abuse by defendants noted in *Majors* is present in any case where the defendant has asked for or agreed to a continuance to a status date or a pretrial date without setting a specific trial date, regardless of whether the defendant has expressly agreed that the time will toll until the next trial setting. As occurred here, a defendant could still announce ready for trial on a status date and claim that this restarts the speedy trial clock without regard to the court's or the State's availability. Although "responsibility for delays caused by crowded dockets rests with the State and not the defendant," "a defendant must share the blame where he causes or concurs in a rescheduling." *People v. Wiegand*, 183 Ill. App. 3d 216, 218 (1989). Even if we consider the trial court's crowded docket as one reason for the delay from April 25, 2023, to July 18, 2023, "where there are two reasons for the delay, one attributable to the State and the other to the defendant, 'the fact that the delay was partially attributable to the defendant will be sufficient to toll the statutory term.' " *People v. Lilly*, 2016 IL App 140286, ¶ 31 (quoting *People v. Plair*, 292 Ill. App. 3d 396, 400 (1997)).

¶ 31    Here, defendant's repeated continuances were a cause of the rescheduling and constitute delays occasioned by defendant. Following a defendant's motion to continue, a defendant is free to later announce that he is ready for trial, and a trial date will need to be set. It follows that the delay from the time of the motion to continue until the next trial setting is delay occasioned by defendant. In other words, the time from a defendant's announcement that he is demanding a

12

speedy trial until the next trial date is still a part of defendant's most recent motion to continue. If this court were to hold otherwise, it would in essence be allowing a defendant to object to a delay of his own creation. This can be avoided by setting a jury trial date at the time the motion to continue is granted.

¶ 32    We note that the trial court and the State both tried to accommodate defendant's request to have the trial set soon after defendant announced that he was ready for trial on April 25, 2023, by agreeing to set the matter for a jury trial one week later on May 2, 2023. When, within a couple of hours, the State realized that some of its witnesses were unavailable on such short notice and that it could not be ready, the court reset the matter on what it had previously told the parties was its next available date. Nothing that transpired during the discussion that morning indicates that the State was trying to cause defendant an unjust delay. During the previous discussion earlier that morning, defense counsel acknowledged that the court's docket was full, noting that one of the cases set was her case.

¶ 33    While defendant claims that the Vermilion County practice of tolling the clock from the date of a defendant's continuance to the next trial setting adds a burden to defendant by requiring him to make sure that the matter is set for a trial, we do not believe that this is any substantial burden. When a defendant is ready to proceed to trial, he need only announce that to the trial court. Although the coordination of a trial docket is not strictly linear, after a series of continuances lasting more than eight months, a defendant cannot reasonably expect to jump to the head of the line at his demand. *Majors* clearly stands for the proposition that it is appropriate for a trial court to attribute delay based upon a defendant's continuance from the date of the continuance to the next trial setting. "The right to a speedy trial is not a sword to be used to extricate oneself from criminal charges. It is a shield to protect the accused from unjust and prejudicial delays occasioned

13

by the State." *Majors*, 308 Ill. App. 3d at 1028-29 (citing *People v. Tetter*, 42 Ill. 2d 569, 576 (1969); *People v. Brown*, 117 Ill. App. 2d 97, 103 (1969)).

¶ 34   For these reasons, we conclude that the Vermilion County practice of attributing delay to a defendant from the date of his continuance to his next trial setting, even if it requires the defendant to request a specific trial date, is appropriate and therefore does not run afoul of Illinois Supreme Court Rule 21(a) (eff. Oct. 1, 2021) by abrogating, limiting, or modifying section 103-5(a) of the Code of Criminal Procedure of 1963. 725 ILCS 5/103-5(a) (West 2022).

¶ 35   Furthermore, and for the reasons stated, we cannot find that the trial court abused its discretion in determining defendant is responsible for the delay occurring from April 29, 2023, to the trial setting of July 18, 2023. As noted above, the court and the State both tried to accommodate defendant's request for a short setting. That the State initially agreed to the trial being set a week after defendant renewed his demand is of little import. The trial court specifically found that the two-hour period that it took for the State to realize that it could not be ready for trial on May 2 did not start the clock running again. We cannot say that the trial court's decision to attribute the delay from defendant's renewed speedy trial demand on April 25, 2023, to the trial setting on July 18, 2023, was an abuse of discretion.

¶ 36   Additionally, we note that the period from March 22, 2022 (when defendant made his first speedy trial demand) to April 29, 2022 (when the State moved to continue the May 3, 2022, jury setting) was not explicitly addressed by the trial court in its ruling. The parties addressed this time in the trial court and on appeal. Applying the rationale of *Majors*, we find, contrary to defendant's calculations, that defendant was responsible for the delay from March 22, 2022, until the State's motion to continue on April 29, 2022. When these 38 days are subtracted from defendant's calculations, it is even clearer that the State did not violate defendant's statutory speedy trial right.

14

By our count, at the time defendant renewed his speedy trial demand on April 25, 2023, only 51 days of delay were attributable to the State. Again, it cannot be said that defendant's statutory right to a speedy trial was violated.

¶ 37 We next consider defendant's claim that the trial court improperly imposed defendant's agreed-to 18-year sentence in the Illinois Department of Corrections in the absence of a presentence investigation (PSI). As noted above, the parties agreed that, should the trial court find defendant guilty at the stipulated bench trial, defendant would receive an 18-year sentence. When asked, defendant confirmed that he understood this agreement, and after the court explained the stipulated bench trial process, defendant confirmed that he wished to proceed. After finding defendant guilty, the matter immediately proceeded to sentencing. The State and defense counsel waived the PSI. The court sentenced defendant to 18 years in prison. Defendant now argues that the trial court erred by proceeding to sentencing in the absence of a PSI or a finding on the record as to defendant's criminal history. We agree.

¶ 38 Section 5-3-1 of the Unified Code of Corrections provides as follows:

> "A defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court.
>     However, *** the court need not order a presentence report of investigation where both parties agree to the imposition of a specific sentence, provided there is a finding made for the record as to the defendant's history of delinquency or criminality, including any previous sentence to a term of probation, periodic imprisonment, conditional discharge, or imprisonment.
>     The court may order a presentence investigation of any defendant." 730 ILCS 5/5-3-1 (West 2022).

¶ 39 Defendant acknowledges that this issue was not raised in a posttrial motion; however, relying on *People v. Youngbey*, 82 Ill. 2d 556 (1980), defendant argues that he could not waive the PSI. In *Youngbey*, the court noted that the PSI "is for the enlightenment of the court, as well as for the benefit of the defendant. As such, it is not a personal right of the defendant." *Id.* at 565. Because

15

the requirement of a PSI is a reasonable legislative enactment and not a personal right of the defendant, the court held that a PSI "cannot be waived." *Id.*

¶ 40 Drawing a distinction between waiver and forfeiture, the State counters that while a PSI cannot be waived, it can be forfeited. In support of its argument, the State relies on *People v. Sophanavong*, 2020 IL 124337. In *Sophanavong*, the defendant pled guilty to first degree murder and was sentenced to an agreed upon sentence of 55 years in prison. *Id.* ¶ 6. The trial court asked about the defendant's criminal history and was told that defendant had a prior Class 1 felony and some traffic tickets. *Id.* ¶¶ 9-10. The parties then waived the PSI, and the court sentenced defendant to 55 years in prison. *Id.* ¶¶ 10-11. The trial court told defendant that, prior to taking an appeal, he would have to file a motion to withdraw his guilty plea. *Id.* ¶ 11. Defendant filed a timely motion to withdraw his guilty plea. *Id.* ¶ 12. Over the course of the next three years, two amended motions to withdraw guilty plea were filed. *Id.* ¶¶ 13-14. None of the postplea motions claimed a sentencing error. *Id.* On his second appeal, the defendant raised, for the first time, his claim that the trial court erred by failing to strictly comply with section 5-3-1 of the Unified Code of Corrections because the court had not been informed of the dispositions of defendant's prior criminal cases. *Id.* ¶ 15. The appellate court agreed with the defendant and remanded the matter for resentencing. *Id.* ¶ 17. On appeal from the appellate court, the Illinois Supreme Court distinguished *Youngbey*, noting, in part, that the State had not raised forfeiture and the court did not discuss forfeiture in *Youngbey*. *Id.* ¶ 28. Noting that the defendant's act of pleading guilty forecloses any claim of error, the *Sophanavong* court found that the issue had been forfeited and reversed the appellate court and affirmed the defendant's sentence. *Id.* ¶ 33. We find *Sophanavong* is distinguishable.

¶ 41 Unlike the defendant in *Sophanavong*, who was properly given his appeal rights, the defendant here was not properly given his appeal rights. In the case before us, following the

16

stipulated bench trial and sentencing, the trial court confused defendant's appeal rights. The court started to give defendant his appeal rights under Illinois Supreme Court Rule 604(d). Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Defense counsel noted that this was not a guilty plea and suggested that the Rule 605 admonishments were appropriate. The court then provided defendant with some of the admonishments required under Rule 605 (Ill. S. Ct. R. 605 (eff. Oct. 1, 2001)), but when the court reached the issue of defendant's right to appeal his sentence, the court stated, "Any issue or error regarding the sentence imposed or any aspect of the sentencing hearing not raised, which I guess you have agreed to that." In other words, the court failed to properly admonish defendant under Rule 605(a)(3)(C) "that any issue or claim of error regarding the sentence imposed or any aspect of the sentencing hearing not raised in the written motion shall be deemed waived." Ill. S. Ct. R. 605(a)(3)(C) (eff. Oct. 1, 2001).

¶ 42 "Ordinarily, issues not raised in the trial court are considered forfeited on appeal." *People v. Chapman*, 379 Ill. App. 3d 317, 326 (2007) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). "However, the forfeiture rule is an admonition to the parties and not a jurisdictional limitation on the reviewing court." *Id.* (citing *People v. Porter*, 372 Ill. App. 3d 973, 977 (2007), quoting *People v. Normand*, 215 Ill. 2d 539, 544 (2005)). Because the trial court failed to fully admonish defendant pursuant to Rule 605, we decline to apply forfeiture on this issue.

¶ 43 The *Youngbey* court determined that section 5-3-1 of the Unified Code of Corrections imposed a mandatory obligation on the trial court that the defendant cannot waive. *Youngbey*, 82 Ill. 2d at 564. While we acknowledge that defendant agreed to this sentence, we also note that the court and the parties could have easily complied with section 5-3-1 by having the court make a "finding made for the record as to the defendant's history of delinquency or criminality." 730 ILCS 5/5-3-1 (West 2022). For these reasons, we vacate defendant's sentence and remand this matter for

resentencing that complies with the mandate of section 5-3-1 and proper admonishments under Rule 605.

¶ 44                                III. CONCLUSION

¶ 45    For the foregoing reasons, we find that defendant's statutory speedy trial right was not violated and affirm defendant's conviction for home invasion. We vacate defendant's sentence and remand for a new sentencing hearing that includes full compliance with section 5-3-1 of the Unified Code of Corrections and proper admonishments under Rule 605.

¶ 46    Affirmed in part; reversed and remanded in part with directions.